## In the Matter of the Estate of WORTHINGTON ROMAINE, Deceased.

Under the provision of the Collateral Inheritance Act (§ 1, chap. 483, Laws of 1885, as amended by chap. 713, Laws of 1887), providing that "all property which shall pass by will or by the intestate laws of this state, from any person who may die seized or possesed of the same, or if such decedent was not a resident of this state at the time of death, which property, or any part thereof, shall be within this state," shall be liable to a tax as prescribed, personal property in this state, owned by a non-resident intestate at the time of his death, which was habitually kept or invested by him here, is liable to taxation. (HAIGHT, J., dissenting.)

*In re Enston* (113 N. Y. 174); *Orcutt's Appeal* (97 Penn. St. 179), distinguished.

Reported below, 58 Hun, 109.

(Argued March 4, 1891; decided June 2, 1891.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 24, 1890, which affirmed a decree of the surrogate of the city and county of New York, which assessed a tax under the "Collateral Inheritance Act;" and also affirming an order of said surrogate appointing an appraiser under said act.

This was a proceeding instituted by the district attorney of the city and county of New York, to compel the administrator of the estate of one Worthington Romaine, deceased, to pay taxes upon certain collateral inheritances, pursuant to chapter 483 of the Laws of 1885, as amended by chapter 713 of the Laws of 1887.

September 27, 1888, said Romaine died, unmarried and intestate, at Petersburg, Virginia, leaving as his only next of kin a brother and a sister, residing in this state, and two nephews and a niece, who were non-residents. For at least ten years prior to his death, he had been a resident of and domiciled in the state of Virginia, but no letters of administration appear to have been issued or applied for in that state. At the time of his death, and for about three years prior thereto, he was the lessee of a box in a safe deposit company

in the city of New York, in which he kept certain securities, consisting of stocks and bonds of different corporations and a mortgage upon real estate in said city, as well as several pass-books showing deposits by him in various savings banks in the same place to a considerable amount. It did not appear whether said stocks and bonds were issued by foreign or domestic corporations. That part of said property so invested or kept in this state, to which his nephews and niece were entitled, being one-third of the whole, was appraised at the sum of $23,742.15.

October 12, 1888, letters of administration were issued upon his estate by the surrogate of the city and county of New York, and when this proceeding was initiated, the administrator had distributed the most of the assets among the next of kin. December 6, 1889, an appraiser was appointed, and upon his report, a decree was made by the surrogate imposing a tax of five per cent upon the shares of the nephews and niece of the decedent, and the administrator was directed to pay the same. Upon appeal to the General Term, the decree was affirmed and the administrator thereupon appealed to this court.

*Robert L. Redfield* for appellants. The statute expressly limits and restricts taxation on collateral inheritances (in cases of intestacy) to such as are effectuated by the intestate laws of this state, and, by implication, excludes inheritances under the laws of other states. (*In re McPherson*, 104 N. Y. 306; *In re Howard*, 5 Den. 483; *In re Tulane*, 51 Hun, 213; *In re Orcutt*, 97 Penn. St. 179; Cooley on Tax. [2d ed.] 267; *Wallace* v. *Atty.-Gen.*, L. R. [1 Ch. App.] 9.) The amendatory act of 1887 does not disclose any change of intention on the part of the legislature, nor does it enlarge or in any way modify the limitation of taxation fixed by the act of 1885. (*In re McPherson*, 104 N. Y. 306; *In re Howard*, 5 Den. 483; *Lambert* v. *People*, 76 N. Y. 225; *In re Enston*, 113 id. 174.) The succession in this case was not by the intestate laws of this state, but by the laws of Virginia. (*Parsons* v. *Lyman*, 20 N. Y. 103; *In re Hughes*, 95 id. 55; *Despard*

v. *Churchill*, 53 id. 192; *Stack* v. *Stack*, 6 Den. 280; *In re Braithwaite*, 19 Abb. [N. C.] 113; *Miller* v. *Miller*, 91 N. Y. 315; *Hardenburg* v. *Manning*, 4 Den. 437.) The property in question never was within this state, within the meaning of the statute. Being temporarily here for safe keeping, its situs was that of the intestate's domicile. (*In re Enston*, 113 N. Y. 174; *In re Tulane*, 51 Hun, 213; *Guillander* v. *Howell*, 35 N. Y. 657; *Hoyt* v. *Commissioner*, 23 id. 224; *Herron* v. *Kuran*, 59 Ind. 473.)

*De Lancey Nicoll* and *Benjamin F. Dos Passos* for respondent. The property of decedent being, at the time of his death, actually within the state and passing to his nephews and niece, became liable under chapter 713 of the Laws of 1887 to taxation, irrespective of the fact that his domicile was in Virginia and he died there intestate. (Laws of 1885, chap. 483; *In re Enston*, 113 N. Y. 174; Laws of 1887, chap. 713, § 1; *In re Vinot*, 7 N. Y. Supp. 444; *U. S.* v. *Rankin*, 8 Fed. Rep. 874; *People* v. *Davenport*, 91 N. Y. 585.) Decedent's whole estate having been voluntarily distributed by appellants under the laws of this state and not at the domicile, the property must be deemed to have passed here within the contemplation of the statute. (Redf. Surr. Pr. 332; *Alvany* v. *Powell*, 2 Jones Eq. 51; *In re Ewing*, 1 C. & F. 151; *In re Enston*, 113 N. Y. 184; *In re Clark*, 9 N. Y. Supp. 444.) There being express intention to tax property of all non-residents under the act of 1887, appellants are not relieved from taxation upon the bonds and stocks, or bond and mortgage and money of the decedent, either by the fiction of law placing such property at the domicile, nor by reason of the statutes of this state exempting the property of non-residents sent here to agents for investment or for collection. (*Hoyt* v. *Comrs.*, 23 N. Y. 228; *Catlin* v. *Hull*, 21 Vt. 158; *Graham* v. *Bank*, 84 N. Y. 400; *People* v. *Gardner*, 51 Barb. 357, 358; *People* v. *Ogdensburg*, 48 N. Y. 397; *Wallace* v. *Atty.-Gen.*, L. R. [1 Ch. App.] 1; *Alvany* v. *Powell*, 2 Jones' Eq. 51; *State* v. *Dalrymple*, 70 Md. 294; *In re Enston*, 113 N. Y. 183, 184;

*In re Lovelace*, 4 DeG. & J. 340 ; *In re Wollops*, 1 id. 656 ; *Lyall* v. *Lyall*, L. R. [15 Eq.] 1 ; *Orcutt's Appeal*, 97 Penn. St. 185, 186 ; *In re Del Busto*, 23 W. N. C. 111 ; *Commonwealth's Appeal*, 11 id. 494 ; *Mathby* v. *R. R. Co.*, 2 P. F. Smith, 140 ; *Williams* v. *Bd. Suprs.*, 78 N. Y. 561 ; *Hoyt* v. *Comrs.*, 23 id. 224.) Even if decedent's property was exempted from property taxation, that does not relieve appellants from the collateral inheritance tax, as that act does not impose a property tax. (*In re McPherson*, 104 N. Y. 317 ; *In re Howard*, 5 Dem. 483 ; *Eyre* v. *Jacob*, 14 Grat. 427 ; *Wallace* v. *Meyers*, 38 Fed. Rep. 184 ; *Strode* v. *Comrs.*, 52 Penn. St. 181 ; *Miller* v. *Commonwealth*, 27 Grat. 110 ; *Barringer* v. *Cowan*, 2 Jones' Eq. 433 ; *Comrs.* v. *Herman*, 10 W. N. C. 210, 212 ; *Society for Savings* v. *Coit*, 6 Wall. 594 ; *Prov. Inst.* v. *Mass.*, 6 id. 611, 632.)

Vann, J. The question presented by this appeal is whether succession to the personal property of a non-resident intestate, invested or habitually kept by him in this state, is subject to taxation under the Collateral Inheritance Act.

The original act provided that after the passage thereof " All property which shall pass by will or by the intestate laws of this state from any person who may die seized or possessed of the same while being a resident of the state, or which property shall be within the state," to any one other than certain excepted persons nearly related to the decedent, should be subject to a tax of five dollars upon the hundred " of the clear market-value of such property." (Laws of 1885, chap. 483, § 1.) When this statute came before the courts for construction, it was held not to apply to property within the state, either real or personal, that passed by will or intestacy from a non-resident decedent to collateral relatives or strangers, and that it was limited in its effect to property so passing from resident decedents. (*Matter of Enston*, 113 N. Y. 174 ; *Matter of Tulane*, 51 Hun, 213 ; *Matter of Clark*, 9 N. Y. Supp. 444.) In 1887, however, the legislature amended the act so that it now provides that " all

property which shall pass by will or by the intestate laws of this state, from any person who may die seized or possessed of the same while a resident of this state, *or if such decedent was not a resident of this state at the time of death*, which property, or any part thereof, shall be within this state," etc. (Laws of 1887, chap. 713, § 1.) The part inserted by the amendment is italicised for convenience of comparison. What did the legislature wish to accomplish when it inserted these words? This question is not easily answered, for the section is so involved as to make the duty of discovering its meaning unusually difficult. Shortly after the original act was passed litigation arose over its provisions and the courts were called upon to discharge the delicate function of declaring what the confused and conflicting passages meant. The Surrogate's Court and the Supreme Court held that the act, before it was amended, applied to the estates of non-resident decedents, and when the question reached the Court of Appeals two of its judges were of the same opinion, but a majority thought otherwise and the construction of the lower courts was overturned. (*Matter of Enston*, 5 Dem. 93 ; *S. C.*, 46 Hun, 506 ; *S. C.*, 113 N. Y. 174, 183.) Although the amendment of 1887 was probably passed in view of the litigation then pending, and with the intention of removing the doubt caused thereby, candid men are still compelled to hesitate and divide in pronouncing judgment.

It must be assumed that the legislature in passing the amendment intended to make some change, and the expression " or if such decedent was not a resident of this state at the time of death " suggests what that change was. Before it was amended the act, as was subsequently held, applied only to one class of persons, resident decedents, but by the amendment it is made applicable to another class, non-resident decedents. But does it apply to all persons belonging to these two classes? It is not denied that it applies to all resident decedents, and to all non-resident testators, but it is contended that it does not apply to non-resident intestates, because property " which shall pass   *   *   *   by the intestate laws of this

state " is expressly mentioned to the implied exclusion of property passing by the intestate laws of other states. This is the position of the appellant, whose learned counsel claims that the act, in its present form, was designed to meet cases of succession by will, but not of succession by intestacy, unless the intestate was a resident of this state    It is difficult, however, to see why the legislature should discriminate simply for the purposes of taxation between the property of a non-resident decedent who made a will and of one who did not. It is not probable that there was an intention to tax the estates of non-resident testators and to exempt those of non-resident intestates, because there is no foundation for such a distinction. (*People ex rel. Westchester Fire Ins. Co.* v. *Davenport,* 91 N. Y. 574, 585.) Property of the same kind, situated in the same place, receiving the same protection from the law, and administered upon in the same way, would naturally be required to contribute toward the expense of government upon the same basis, regardless of whether its last owner died testate or intestate. The language of the act, as amended, does not indicate the intention thus contended for, when the entire section is read together, because non-resident decedents are mentioned, while non-resident testators are not. Although " the intestate laws of this state " are named as a source of title, they are not the exclusive source, and neither necessarily nor naturally apply to the property of non-resident decedents named at a later point in the section. In this discussion it is assumed, as the appellant claims, that the personal property of such persons passes according to the laws of the state where they reside. By comparing the original with the amended act and analyzing the provisions of the latter in the light thus afforded, we think that the legislature intended by the fore part of the sentence under consideration, to provide for succession to the estates of residents, to which " the intestate laws of this state" apply ; that after providing for that class a change is made, indicated by the use of the disjunctive particle " or," which suggests a transition to another subject, and introduces another class, non-residents, who are also provided for,

and then each class is carried forward to the taxing clause, which embraces both. As thus construed, "the intestate laws of this state" have no application to the second class, being separated from it by the word "or" and confined to that clause of the sentence in which they occur. They are not repeated in the second clause, either literally or by implication, although the words "all property" in the first clause are repeated in the second in the form of "which property;" but no limitation is there applied to them. "Which property," as thus used, means the property of the non-resident decedent, and such property, if personal, would not pass by the intestate laws of this state. This construction is confirmed by referring to other portions of the act, which provide that "all administrators, executors and trustees" shall be liable for the taxes until paid (§ 1), and that "whenever any foreign executor or administrator shall assign or transfer any *stocks or loans* in this state, standing in the name of a decedent," the tax shall be paid to the proper officer on such transfer, or the corporation permitting it shall become liable to pay the tax, provided it had knowledge of the facts in time. (§ 11.) It is clear that the act is not confined to real estate, but embraces personal property also, including evidences of debt. All administrators are made liable for the tax, and corporations can transfer stock standing upon their books in the name of a non-resident decedent only at their peril until the tax thereon is paid. The fiction of law that personal estate has no *situs* away from the person or residence of its owner is done away with, to a limited extent and for a specified purpose, and the truth is substituted in its stead as the rule of action. That the legislature had the power to do this can hardly be questioned. (*Matter of McPherson*, 104 N. Y. 306.) As was said by Judge STORY, when writing upon this subject: "A nation within whose territory any personal property is actually situated has as entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situated there." (Conflict of Laws, § 550.) In *People ex rel. Hoyt* v. *Commissioners of Taxes* (23 N. Y. 224, 228), Judge COMSTOCK

quotes with approval the foregoing extract, and adds : "I can think of no more just and appropriate exercise of the sovereignty of a state or nation over property situated within it and protected by its laws, than to compel it to contribute toward the maintenance of government and law. Accordingly there seems to be no place for the fiction of which we are speaking (*mobilia personam sequantur*), in a well-adjusted system of taxation." (See, also, *Guillander* v. *Howell*, 35 N. Y. 657 ; *Graham* v. *First National Bank of Norfolk*, 84 id. 393, 401 ; *Catlin* v. *Hull*, 21 Vt. 152 ; Dos Passos on Collateral Inheritance, 37, 92.)

*Orcutt's Appeal* (97 Penn. St. 179), is pressed upon our attention as opposed to the views here expressed, but that case was decided under a statute differing materially from the one under consideration. (Purd. Dig. vol. 1, 259.) The main point of contention there was whether United States bonds, no matter where deposited, had a *situs* different from the domicile of their owner, and it was held that they had not, by the act then under review, which was declared " to embrace only personal property of a tangible nature, actually situated or used for business purposes within the commonwealth, and not to mere certificates of indebtedness, such as government bonds."

It was held otherwise by the Court of Appeals of Maryland in *State* v. *Dalrymple* (70 Md. 294), where the words " being in this state " were declared to refer to the actual and not to the constructive situation of the property.

In *Alvany* v. *Powell* (2 Jones Eq. 51) it was held that property, whether real or personal, situate in the state of North Carolina, but belonging to one domiciled and dying intestate in Canada, was subject to the succession tax imposed by a statute of said state.

When the *Matter of Enston* (*supra*) was before this court the amendment of 1887 had been passed, but it did not apply to the facts of that case, because they arose prior to its passage, although the decision was made afterward. Still the amendment was considered in the prevailing opinion which stated

(p. 184) that "by chapter 713 of the Laws of 1887, section 1 of the act of 1885 was so amended as to subject to its operation the property within this state of a non-resident decedent; and this amendment furnishes some evidence that prior thereto the proper construction of the section, according to the understanding of the legislature, did not include within its operation such property." In the dissenting opinion reference was made to the same subject in this way (p. 184): "Under either statute (the original and the amendment) the clear intention was to bring in for taxation all property, real and personal, without regard to residence, which was within the jurisdiction of the courts of this state, and to be administered under its laws for the beneficiaries named in the act, subject only to the exceptions named in the act itself." All of the property in question has been administered upon in this state alone. There appeared to be no difference in the minds of the six judges who took part in the decision as to the effect of the amendment of 1887. Apparently, they were all of the opinion, as the most of those participating in this decision are, that by the change then made the act applied to the property within this state of any non-resident decedent.

The appellant further contends that the property in question was not "within this state," according to the true meaning of the statute, and the contention is supported by the argument that it would be unreasonable to tax money found upon the person of a non-resident who died while traveling in this state. We should hesitate before applying the statute to any property casually brought into the state for a temporary purpose, as by a visitor or traveler, but the record before us does not present such a case. It might well be held that such property, although literally "within this state," was not here in the sense meant by the statute, on account of the transitory and accidental character of its presence and the immediate custody of the owner. (*Herron, Treasurer,* v. *Keeran,* 59 Ind. 472, 476.) Where, however, the money of a non-resident is invested in this state, as it was by Mr. Romaine in the bond and mortgage in question, and in the deposits

made by him in the savings banks, or where the property of a non-resident is habitually kept, even for safety, in this state, we think that the statute applies both in the letter and spirit. Such property is within this state in every reasonable sense, receives the protection of its laws and has every advantage from government, for the support of which taxes are laid, that it would have if it belonged to a resident. We think that a fair construction of the act permits no distinction as to such property, based simply upon the residence of the deceased owner. We have nothing to do with the policy of the statute, as our duty is discharged when we declare its meaning and apply it to the case in hand. That duty we discharge in this instance by adjudging that succession to the personal property in question, lately belonging to Worthington Romaine, a non-resident intestate, but invested or habitually kept by him in this state, is taxable under the Collateral Inheritance Act, in so far as it passed to persons not excepted from its provisions.

The orders should be affirmed, with costs.

HAIGHT, J. (dissenting). The question is as to whether the next of kin of a non-resident decedent intestate are liable to pay a collateral inheritance tax on the personal property of such decedent found within this state.

The statute provides that " after the passage of this act all property which shall pass by will or by the intestate laws of this state, from any person who may die seized or possessed of the same while a resident of this state, or if such decedent was not a resident of this state at the time of death, which property, or any part thereof, shall be within this state   *   *   * shall be and is subject to a tax of five dollars on every hundred dollars of the clear market value of such property, etc. (Chap. 713, Laws of 1887.)

The taxes imposed by this act are special, and not general, and the rule is that special tax laws are to be strictly construed against the government and favorably to the taxpayer ; that a citizen cannot be subjected to special burdens without clear warrant of law. (*In the Matter of McPherson*, 104 N. Y.

306–317; Dos Passos on Collateral Inheritance Taxes, 41.) In the *Matter of Enston* (113 N. Y. 134–177), ANDREWS, J., in delivering the opinion of the court, says: " The tax imposed by this act is not a common burden upon all the property or upon the people within the state. It is not a general but a special tax, reaching only to special cases and affecting only a special class of persons. *  *  *  In such a case they (the executors) have the right, both in reason and in justice, to claim that they shall be clearly brought within the terms of the law before they shall be subjected to its burdens. It is a well-established rule that a citizen cannot be subjected to special burdens without clear warrant of law."

With this rule in view, operating as our guide, let us review the statute. " All property which shall pass by will or by the intestate laws of this state from any person who may die seized or possessed of the same while a resident of this state." Here we have clearly expressed the legislative intent to subject to the tax, both real and personal property of a resident which shall pass by will or by the intestate laws of this state. The condition upon which the tax may be imposed is that the property shall pass by will or by the intestate laws of the state.

" Or if such decedent was not a resident of this state at the time of death, which property or any part thereof shall be within this state." As we have seen, the former clause of the statute quoted refers to the residents of the state and the latter clause to non-residents. The two clauses are connected by the word "or." But we do not understand that by the use of this word it was intended to provide for the taxing of other property than that mentioned in the former clause, but only to provide for the taxing of such property of a non-resident decedent which shall be within this state at the time of his death, and this intention is made apparent from the use in the latter clause of the words " which property," thereby referring to the property which should pass by will or the intestate laws of this state.

If we are correct in this interpretation of the statute, it follows that the tax in question was improperly imposed, for the

reason that the property of the decedent found in this state was personal, and the *situs* being with the owner, it would not pass by the intestate laws of this state. (Redfield Surrogate's Court [2d ed.], 588.)

Chapter 483 of the Laws of 1885 was amended by the act in question by the insertion of the words "if such decedent was not a resident of this state at the time of death." Under the former act it was held that the tax could be imposed only upon property so passing by will or by the intestate laws of this state, etc. (*In the Matter of Enston, supra.*)

It is now contended that it was the intention in amending the former act to bring in non-resident decedents and subject their estates to the same burdens as residents. This was doubtless the intention as to the real estate, but as to the personal estate we cannot assume that it was the intention to impose a greater or heavier burden upon non-residents than that which was imposed upon residents. Under the act of 1885 the tax could not be imposed upon real estate within this state of a non-resident. Such real estate is subject to the jurisdiction of our state, and would pass under its laws and under the amended provision of the act of 1887; it would clearly be assessable here and could not be elsewhere. But it is quite different with the personal property of a non-resident. As we have already stated, the *situs* of such property is with the owner, and upon his death is distributed according to the law of his domicile, and does not pass under our intestate laws. (Redfield Surrogate's Court, *supra.*)

In many of the states similar laws to the one in question have been enacted. So that if the personal property of a non-resident decedent should be assessed in this state and the tax imposed upon the next of kin, it would subject them to the payment of a double tax, for after the transmission of the property to the state of the domicile, it would pass under the laws of that state, and they would be liable to the payment of a similar tax in that state. And the same would be true of a decedent of this state who should die having personal property in another state. After being taxed in that state, and the

property transmitted to this state, it would pass under our laws and would, consequently, under the provisions of the act, be clearly liable to the assessment of a collateral inheritance tax.

Again referring to the statute, all property which shall pass by will, or the intestate laws of this state, shall be subject to the tax.

In determining the question whether the property is subject to the tax, the test is, does it pass in the manner provided by the statute?

As we have seen, the property in question does not pass by will, or under any of the laws of our state.

The order should be reversed and the proceedings dismissed.

All concur with VANN, J., except HAIGHT, J., dissenting.

Order affirmed.