the period of his absence, which, according to the bridge tender, was not more than 10 or 15 minutes, some few minutes of which were necessarily consumed in his conversation with Officer Howard, whom he found sitting on a box, complaining of being ill; and it was a natural thing for him, under the circumstances, to approach Howard, and inquire as to his condition. The relator and Howard were tried together, and both were dismissed; but the conviction of Howard was reversed, for the reasons stated in the opinion of the court. 15 App. Div. 401, 44 N. Y. Supp. 102. As against this relator, we think the same result should follow, because it appears that, while he was some feet off his post, that of itself was not a "neglect of duty." If he was called from his post by circumstances over which he had no control, or in the discharge of his duty, he did not "neglect" it. The cause of his temporary absence was established by indisputable evidence, to the benefit of which the relator was entitled, and, upon the whole evidence, we do not think the charge was sustained.

The proceedings should therefore be annulled, and the relator reinstated, with costs. All concur.

---

· In re EMBURY'S ESTATE.

(Supreme Court, Appellate Division, First Department. June 11, 1897.)

1. COLLATERAL INHERITANCE TAX—NONRESIDENT DECEDENTS—JURISDICTION.

Laws 1887, c. 713, imposed a tax on property within the state belonging to a nonresident decedent's estate, and provided (section 15) that "the surrogate's court in the county in which the real property is situate of a decedent who was not a resident of the state, or in the county of which the decedent was a resident at the time of his death, shall have jurisdiction" of questions relating to the tax. *Held*, that the tax could be enforced against a nonresident decedent's estate only when he died seised of real estate in New York, since the statute conferred jurisdiction on the surrogate only in such case.

2. SAME—WITHDRAWAL OF PROPERTY FROM STATE.

A nonresident, who had personal property in New York, died while Laws 1887, c. 713, was in force, declaring all such property subject to a collateral inheritance tax, but not providing for its enforcement. The executors withdrew the property from the state and distributed it. *Held*, that the tax could not afterwards be collected, under Laws 1892, c. 399, passed after such withdrawal, providing for the collection of the tax on any property in New York belonging to a nonresident decedent's estate, as there was then no property of the estate in New York, and consequently the rule that procedure is governed by the statute in force when the proceeding was instituted did not apply.

3. SAME—EFFECT OF STATUTE AS TO NONRESIDENTS.

The statute imposing a collateral inheritance tax on the property of nonresident decedents is not a tax on the succession which is governed by the law of decedent's domicile, but is based on the dominion of the state over property within its territory.

Appeal from surrogate's court, New York county.

Proceeding for the appraisal of the property of Philip Embury, deceased, for taxation under the collateral inheritance tax law. From an order denying an application to dismiss the proceeding,

on the ground that the surrogate had no jurisdiction (45 N. Y. Supp. 821), the executors appeal. Reversed.

Argued before RUMSEY, PATTERSON, O'BRIEN, INGRAHAM, and PARKER, JJ.

Lucius H. Beers, for appellant.
Emmet R. Olcott, for respondent comptroller.

PARKER, J. After the passage of chapter 483 of the Laws of 1885, then known as the "Collateral Inheritance Act," it became a matter of legal controversy whether the property of a nonresident decedent, situate within this state, was subject to the tax provided for by such act It was finally decided by the court of appeals in the year 1889 that it did not affect property within this state which passed by will or intestacy from a nonresident decedent to collateral relatives or strangers. In re Enston's Will, 113 N. Y. 174, 21 N. E. 87. Intermediate the passage of the statute and the decision in Re Enston's Will, the legislature amended such act by chapter 713 of the Laws of 1887, and it was later held, but by a divided court, that one of the objects of the amendment was to tax the personal property within this state owned by a nonresident decedent In re Romaine, 127 N. Y. 80, 27 N. E. 759.

A few months after the amendment of 1887 took effect, Philip Embury, a citizen of and resident in New Jersey, died at West Orange, in that state. He left a will, in which he made disposition of all of his estate, and appointed as executors Benjamin T. Kissam and Aymar Embury, both of whom were at the date of testator's death, and ever since have been, citizens of and residents of New Jersey. The will was thereafter duly probated in Essex county, N. J. Subsequently, and in November, 1888, the executors rendered an account of their trust before the orphans' court of Essex county, N J., and were discharged. The will was not proved, nor were ancillary executors or administrators appointed in this state, nor did the executors invoke the laws of the state of New York for any purpose. Philip Embury, at the time of his death, was not the owner of any real property in the state of New York; but he was the owner of certain stocks of New York banks, and had moneys on deposit both in a bank and a trust company doing business in the city of New York. The executors withdrew the deposits, and took them, together with the bank shares or their proceeds, to New Jersey, for disposition in accordance with the provisions of the will, prior to their being discharged as executors.

The executors did not pay any tax under the collateral inheritance tax act of 1887, nor did the surrogate's court of New York county have jurisdiction to appoint an appraiser, and fix the value of the personal property, and the amount of the tax thereon. The section of the act of 1887 which attempts to confer jurisdiction on the surrogate's court (section 15) reads as follows:

"The surrogate's court in the county in which the real property is situate of a decedent who was not a resident of the state, or in the county of which the decedent was a resident at the time of his death, shall have jurisdiction to hear and determine all questions in relation to the tax arising under the provisions

of this act, and the surrogate first acquiring jurisdiction hereunder shall retain the same to the exclusion of every other."

The statute, therefore, only conferred on the surrogate jurisdiction in the case of such nonresident decedents as should die seised of real estate within the surrogate's county. It was so held in Re Enston's Will, 113 N. Y. 174–181, 21 N. E. 87. The act of 1885 was under consideration, but section 15 of that act is precisely the same as section 15 of the act of 1887. It is true that in Re Romaine, 127 N. Y. 80, 27 N. E. 759, it was held that the amendment of 1887 rendered liable to taxation all the personal property within this state belonging to a nonresident intestate at the time of his death, and which was habitually kept or invested by him here; but the question, presented in this case, of the absence of authority on the part of the surrogate's court to take the steps necessary to the imposition and collection of the tax, was neither raised nor considered. It has been held in Re Enston's Will, supra, that the act of 1885 did not subject the personal property of a nonresident decedent to taxation; and the question considered in Re Romaine was whether the act of 1887 was intended to accomplish that result. The court decided that such was the intention. But the intention to impose a collateral inheritance tax on certain property of nonresidents did not operate to confer jurisdiction on the surrogate's court to proceed to tax such property. Its jurisdiction was provided by section 15, which, as we have already seen, was, as to nonresident decedents, limited to cases in which a nonresident decedent left real estate within the county. In other words, the statute of 1885, as amended by the act of 1887, declared such of Embury's property as was in New York taxable, but omitted to give the surrogate's court jurisdiction to impose the tax,—a situation to which an expression of the court of appeals in Re Stewart, 131 N. Y. 284, 30 N. E. 186, is applicable:

"It is not enough for the legislature to declare that such interests are taxable. If no mode is provided for assessing and collecting the tax, the law is imperfect, and cannot, as to such interests, be executed."

A tax cannot be legally imposed unless the statute, in addition to creating the tax, provided for an officer or tribunal who shall appraise and assess the property on notice to the owner. Stuart v. Palmer, 74 N. Y. 183; Remsen v. Wheeler, 105 N. Y. 575, 12 N. E. 564. The principle decided in the cases cited applies to the transfer tax as well as to assessments for public improvements. In re McPherson, 104 N. Y. 321, 10 N. E. 685. In the latter case, the court, having under consideration the collateral inheritance act, said:

"This tax is imposed according to the value of the legacy and collateral inheritance liable to be taxed, and hence there must be some mode of ascertaining that value; and for that purpose judicial action is requisite at some stage of the proceedings before the liability of the taxpayer becomes finally fixed. He must have some kind of notice of the proceeding against him, and a hearing and an opportunity to be heard in reference to the value of his property, and the amount of the tax which is thus to be imposed. Unless he has these, his constitutional right to due process of law has been invaded."

It is apparent, therefore, that when the executors took the deposits and the bank stock out of the state for distribution, no tax had

been imposed upon such property, and there was no method provided by law by which a tax could be legally imposed upon it. What they did they had not only the right, but it was their duty, to do. The legal title to the property in this state vested in them as the personal representatives of their testator by force of the laws of New Jersey. In re Bronson's Estate, 150 N. Y. 1, 44 N. E. 707. They were bound to take possession of it, and make distribution according to the decree of the court having jurisdiction of the estate. Had a tax been imposed on the property, or had a statute providing for its imposition been in force, it would have been their duty to have paid it, or to have requested the imposition of the tax, as the case might be, before removing the property. But it was not their duty to allow these undivided assets to remain in New York in order that the legislature might at some future time so amend the statute as to make it possible to impose a tax on such property.

The respondent does not claim that the surrogate's court had jurisdiction, under the act of 1887, to fix the value of the property and the amount of the tax, or that there was any other procedure by which such a result could have been accomplished, but rather that the statute of 1887 imposed a tax on this property for which the estate was liable, and that it only remained for the legislature to so amend the statute as to provide for collecting the tax, which he contends was done by chapter 399 of the Laws of 1892. The error of this position may be found in the assumption that by the act of 1887 a tax was imposed on this property, for which the estate was liable. As we have already pointed out, a tax was not imposed on the property by the statute, and could not have been, in the absence of an appraisal by a taxing officer upon notice. If the property were still in this state, a different question would be presented; but, free from the imposition of any tax, it was taken to another state, and necessarily beyond the jurisdiction of the surrogate's court of New York, before the act of 1892 was passed. To such a situation the rule in Re Davis' Estate, 149 N. Y. 539, 44 N. E. 185, "that the procedure is controlled by the statute as it existed at the time the proceeding was instituted," has no application.

We have at all times referred to the property kept by the appellant's testator as the subject of taxation, and have done so advisedly, and, as we think, upon authority. So far as residents are concerned, the courts have held that the tax is not upon property, but on the right of succession. In re Swift, 137 N. Y. 77, 32 N. E. 1096; In re Seaman's Estate, 147 N. Y. 69–75, 41 N. E. 401. The constitutional right of the state to impose the tax upon the estate of residents being upheld on the ground that the right of succession is a right which exists merely by favor of the state and under its statute, it is in the power of the state to curtail the right by taxing the succession, and so appropriating a part of the estate. But, as to personal property within this state belonging to nonresident decedents, the succession is under the law of a foreign state, and that succession cannot be taxed by this state. In such case the right of the state to impose a tax is based on its dominion over the property situated within its territory. In re Houdayer's Estate, 3 App. Div. 474, 38 N. Y. Supp.

323; Id. 150 N. Y. 37, 44 N. E. 718; In re Bronson's Estate, 150 N. Y. 1–8, 44 N. E. 707; In re James, 144 N. Y. 10, 38 N. E. 961.

Our conclusion, then, is that the act of 1887 did not give the surrogate's court jurisdiction over this property, and that such court has not acquired jurisdiction by virtue of the later amendments to the law, and now forming a part of the general tax law (chapter 908, Laws 1896), for the reason that the statute only attempts to confer jurisdiction on the surrogate's court over property of nonresident decedents within its territory, and there was no such property at the time of such enactment or subsequent thereto. Years before there has been, but it was lawfully taken out of the state and distributed.

The order appealed from should be reversed, and the proceedings dismissed, with $10 costs and printing disbursements. All concur.