IRVING HOPPER, EXECUTOR OF NICHOLS B. CUSHING, DECEASED, PROSECUTOR, v. EDWARD I. EDWARDS, COMPTROLLER OF THE TREASURY OF THE STATE OF NEW JERSEY.

Argued November 3, 1915—Decided February 18, 1916.

1. The legislature had power to impose a tax upon the transfer, by will or intestate law, of property within the state when the decedent was a non-resident of the state at the time of his death, as was done by section 1 of the Transfer-Inheritance Tax act of 1909. *Pamph. L., p.* 325.

2. Bonds, and mortgages securing them upon real estate located in the State of New Jersey, and which bonds and mortgages were actually physically present within the State of New Jersey at the time of the owner's death, are property within the State of New Jersey within the meaning of paragraph 2 of section 1 of the Transfer-Inheritance Tax act of 1909 (*Pamph. L., p.* 325), and are taxable thereunder even though they have been taxed under a like statute in New York, where the owner resided at the time of his death.

3. Where the legislature enacts a provision taken from a statute of another state, in which the language of the act has received a settled construction, it is presumed to have intended that such provision should be understood and applied in accordance with that construction.

4. Bonds, and mortgages securing them *upon real estate located in the State of New York*, and which bonds and mortgages were actually physically present within the State of New Jersey at the time of the owner's death, are property within the State of New Jersey within the meaning of paragraph 2 of section 1 of the Transfer-Inheritance Tax act of 1909 (*Pamph. L., p.* 325), and are taxable thereunder even though they have been taxed under a like statute in New York, where the owner resided at the time of his death.

On *certiorari,* &c.

Before Justices GARRISON, TRENCHARD and BLACK.

For the prosecutor, *Vredenburgh, Wall & Carey.*

For the defendant, *John W. Wescott,* attorney-general, and *Herbert Boggs,* assistant attorney-general.

The opinion of the court was delivered by

TRENCHARD, J.　This writ of *certiorari* brings up for review an assessment levied by the comptroller under and by virtue of the Transfer-Inheritance Tax act of 1909. *Pamph. L., p.* 325, *ch.* 228.

It appears that the decedent, Nichols B. Cushing, died about November 26th, 1913, at Upper Nyack, New York, where he had resided for ten years next preceding his death; that his legal domicile had been in the State of New York for eighteen years next preceding his death; that he possessed, *inter alia,* bonds, secured by mortgages on real estate, amounting to the sum of $329,674.80, which bonds and mortgages, at the time of his death, were in a safe in a building known as the "Cushing Building," located in the city of Jersey City, in the State of New Jersey; that part of such mortgages were upon real estate located in the State of New Jersey, and part upon real estate located in the State of New York; that the mortgages upon real estate in New Jersey amounted to the sum of $74,514.20, and the mortgages upon real estate in New York amounted to the sum of $255,160.60.

It also appears that collateral inheritance tax has been assessed by the State of New York upon these same bonds and mortgages, and that it has been paid.

The comptroller, in assessing the property of the decedent, subject to taxation under our Transfer-Inheritance Tax act of 1909 (*Pamph. L., p.* 325), included all of such bonds and mortgages as "personal property within the State of New Jersey."

The question presented is whether or not this assessment was lawful, and that in turn presents the question whether or not these bonds and mortgages, so actually within the State of New Jersey at the time of decedent's death, were property within this state within the meaning of paragraph 2 of section 1 of the Transfer-Inheritance Tax act of 1909.

We are of the opinion that these questions must be decided in the affirmative.

Section 1 of the act, so far as relevant to this case, is as follows:

"1. A tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of five hundred dollars or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations, in the following cases:

"*First.* When the transfer is by will or by the intestate laws of this state from any person dying seized or possessed of the property while a resident of the state.

"*Second.* When the transfer is by will or intestate law, of property within the state, and the decedent was a non-resident of the state at the time of his death."

The legislature has the power to thus impose a tax upon the transfer, by will or intestate law, of property within the state, when the decedent is a non-resident of the state at the time of his death.

The power of the state to impose a succession tax upon personal property actually present in this state at the time of a non-resident decedent's death, was, in principle, affirmed in *Blackstone* v. *Miller,* 188 *U. S.* 189. That case came before the Supreme Court of the United States on error from the surrogate's court of New York county. It brought up a decree of that court, sustained by the appellate division of the Supreme Court (69 *App. Div.* 127), and by the Court of Appeals (171 *N. Y.* 682), levying a tax on the transfer by will of certain property of Timothy B. Blackstone, the testator, who died domiciled in Illinois. The decedent, at the time of his death, had on deposit in the United States Trust Company of New York $4,843,456.72. It was subject to draft on five days' notice. The transfer tax was imposed upon this deposit under the New York statute of 1892, the first section of which provides as follows:

"A tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of five hundred dollars or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations not exempt by law from taxation on real or personal property in the following cases:

"*First.* When the transfer is by will or by the intestate laws of this state, from any person dying seized or possessed of the property while a resident of the state.

"*Second.* When the transfer is by will or intestate law, of property within the state, and the decedent was a non-resident of the state at the time of his death."

The Supreme Court of the United States, construing this statute, held that the imposition of such a tax upon this deposit was within the power of the legislature. And our Court of Errors and Appeals has said, in effect, that the state has power to impose a succession tax upon property within this state, without regard to the domicile of the decedent. *Neilson* v. *Russell,* 76 *N. J. L.* 655; *Dixon* v. *Russell,* 79 *Id.* 490.

It is to be noticed that the only difference between the New York act of 1892, and the act of 1909 of this state, is the omission, in the New Jersey statute, of the words "not exempt by law from taxation on real or personal property."

We think that the bonds, and mortgages securing them upon real estate located in New Jersey, which bonds and mortgages were actually physically present in New Jersey at the time of the owner's death, were property within the State of New Jersey within the meaning of paragraph 2 of section 1 of the act of 1909, and so were properly taxed by the comptroller, even though they had been taxed under a like statute in New York, where the owner resided at the time of his death. This was decided, in effect, by *Blackstone* v. *Miller, supra,* and by the same case in the New York Court of Appeals, 171 *N. Y.* 682. Says Mr. Justice Holmes, in the case in the United States Supreme Court (at *p.* 204):

"To come closer to the point, no one doubts that succession to a tangible chattel may be taxed wherever the property is found, and none the less that the law of the *situs* accepts its rules of succession from the law of the domicile, or that by the law of the domicile the chattel is part of a *universitas* and is taken into account again in the succession tax there." (Citing cases.)

He further says:

"No doubt, this power on the part of two states to tax on different and more or less inconsistent principles, leads to some hardship. It may be regretted, also, that one and the same state should be seen taxing, on the one hand, according to the fact of power, and on the other, at the same time, according to the fiction that, in successions after death, *mobilia sequuntur personam* and domicile governs the whole. But these inconsistencies infringe no rule of constitutional law."

The principle of the decision, in Blackstone *v.* Miller, is that the deposit in question in the bank in the State of New York was property within the state, and subject to the transfer tax laws of the state, because the transfer of the deposit necessarily depended upon and involved the law of New York for its execution; or, in other words, that the transfer was subject to the power of the State of New York. The court says (at *p.* 205) :

"If the transfer of the deposit necessarily depends upon and involves the law of New York for its exercise, or, in other words, if the transfer is subject to the power of the State of New York, then New York may subject the transfer to a tax." (Citing cases.) "But it is plain that the transfer does depend upon the law of New York, not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor."   \*   \*   \*   "What gives the debt validity? Nothing but the fact that the law of the place where the debtor is will make him pay. It does not matter that the law would not need to be invoked in the particular case."   \*   \*   \* "Power over the person of the debtor confers jurisdiction, we repeat. And this being so, we perceive no better reason for denying the right of New York to impose a succession tax on debts owed by its citizens than upon tangible chattels found within the state at the time of the death. The maxim *mobilia sequuntur personam* has no more truth in the one case than in the other. When logic and the policy of a state conflict with a fiction due to historical tradition, the fiction must give way."

We have quoted at this length from Mr. Justice Holmes' opinion because of its cogent and exact reasoning, and because the language applies so exactly to the mortgages on real estate located in this state. It must be assumed, as to these bonds and mortgages, that the debtors reside within this state, and are subject to the jurisdiction thereof. This state has power over the person of the debtor and jurisdiction over the real estate, the security for the payment of the debt. It is the law of this state which gives these debts validity, and the law of this state which forces the debtor to pay. The right of the creditor (the decedent or his executor) to collect the debt depends upon the law of this state.

Also, we think that the bonds, and mortgages upon real estate located in the State of New York, and which bonds and mortgages were actually physically present within the State of New Jersey at the time of the owner's death, are property within the state within the meaning of the statute, and were taxable even though they had been taxed under a like statute in New York where the owner resided at the time of his death.

It is to be observed that the provision in question of our act of 1909 was taken from the New York act of 1892, and, upon well-settled principles, it is presumed that the legislature intended that such provision should be understood and applied in accordance with the construction previously placed thereon by the New York courts. *Neilson* v. *Russell, supra.*

The courts of New York, prior to 1909, had decided that securities, such as bonds and mortgages, physically present within the state at the time of decedent's death, are property within the state, within the meaning of their statute of 1892.

*In the Matter of Romaine,* 127 *N. Y.* 80, the Court of Appeals, under the New York act of 1887, providing that "all property which shall pass by will or by the intestate laws of this state, from any person who may die seized or possessed of the same, if such decedent was not a resident of this state at the time of death, which property, or any part thereof, shall be within this state," shall be liable to a tax, held that securities consisting of stocks and bonds of different corporations,

and a mortgage upon real estate in New York, as well as pass-books showing deposits in various savings banks in New York, at the time of his death contained in a box in a safe deposit company in New York, of which he was the lessee, were taxable, although the decedent died intestate in Virginia, and had been domiciled in that state for ten years prior to his death.

*In the Matter of Embury,* 19 *App. Div.* 214, Philip Embury, resident in New Jersey, died at West Orange, this state. He left a will which was probated in Essex county, and appointed as executors persons residents of New Jersey. At the time of his death, Embury was the owner of certain stocks in New York banks, the certificates thereof being physically within the State of New York, and also had moneys on deposit in a bank in New York. The court held that this act of 1887 provided for a tax on such of Embury's property as was physically in New York—that is, the stocks and deposits, but that the tax could not be legally imposed or collected, for the reason that the statute had failed to provide a method for assessing and collecting the tax. The court further held that as to personal property within the state, belonging to non-resident decedents, the right of the state to impose a tax is based on its dominion over the property situate within its territory.

*In the Matter of Whiting,* 150 *N. Y.* 27, decided in 1896, and construing the New York act of 1892, the Court of Appeals held that bonds of foreign, as well as domestic, corporations, owned by a non-resident, but deposited by him in a safe deposit vault in New York state, and so present in the state at the time of decedent's death, are subject to taxation.

See, also, *In the Matter of Morgan,* 150 *N. Y.* 35, holding that bonds of foreign corporations, both registered and coupon, owned by a non-resident decedent, but kept by him in a safe deposit vault in New York, are subject to taxation under the act of 1892; and *In the Matter of Houdayer, Id.* 37, holding that a deposit of money in bank in New York, made by a non-resident decedent, although technically a debt, is still money for all practical purposes, and, as such, taxable under the same act.

*In the Matter of Bronson,* 150 *N. Y.* 1, the Court of Appeals held that bonds of corporations incorporated under the laws of New York, *owned by and in the possession of non-resident decedent at his domicile out of the state at the time of his death,* were not subject to taxation under that act.

Promissory notes owned by a non-resident decedent and payable outside of the State of New York by non-resident makers, having been kept by the decedent in New York, and physically present there at the time of his death, are taxable in New York. *In the Matter of Wall,* 105 *App. Div.* 643. And this has been held, although some of them are secured by mortgages on lands situate outside of New York. *In the Matter of Gibbs,* 60 *Misc. Rep.* 645, and cases cited.

*In the Matter of Burr,* 16 *Misc. Rep.* 89, it was held that bonds secured by mortgages on lands in the State of New York of a non-resident decedent, the bonds and mortgages being in the possession of his attorney, in the State of New York, were taxable under the act of 1892, upon the death of the decedent, although the property was also taxable in the state of the decedent's domicile.

Under these New York decisions, it appears that the test of the liability of the property to taxation under an act such as ours, is its actual physical presence within the taxing state at the time of the non-resident decedent's death, and that bonds, notes, mortgages on lands both within and without the taxing state, are "property" within the meaning of these tax acts, and "property" for the purpose of taxation. So, it seems to follow that these bonds and mortgages in question, being physically within the state, were property within the state, and subject to taxation thereby.

The courts of this state have treated shares of stock as property having an intrinsic value. They represent the interest of the shareholders, as distinct and separate from the property of the corporation. It is the share of stock that is taxed by the state in the case of the national banks, as distinct from the mere interest of the stockholders in the property of the bank itself. *Newark* v. *Tunis,* 81 *N. J. L.* 45; *affirmed,* 82 *Id.* 461.

So, in this case, the bonds themselves are property within the meaning of this section of the Transfer Tax act of 1909. They possess all the elements of property. They may be assigned by the owner, their cancellation destroys the debt, and they may be willed. The mortgages are mere incidents to the debts they are intended to secure and they also possess the elements of property. The statute has expressly said that property within this state shall be subject to tax. In the language of Mr. Justice Vann, *In the Matter of Romaine, supra:* "The fiction of law that personal estate has no *situs* away from the person or residence of its owner is done away with, to a limited extent and for a specified purpose, and the truth is substituted in its stead as the rule of action."

The general doctrine that the *situs* of personal property is the domicile of the owner is, of course, not denied, nor is it denied that this doctrine is often applied in cases of taxation under general tax laws to prevent double taxation. But where the property *itself* is situate in this state, it is within the power of the legislature to tax it, regardless of the residence or domicile of the owner.

Cases cited by the prosecutor do not in anywise oppose this doctrine.

*Hartman's Case,* 70 N. J. Eq. 664, was decided before the passage of the act of 1909, and under the original act of 1892. The Vice Ordinary held that the decedent was a resident of New Jersey *at the time of her death,* and that her personal estate passed to the collateral legatees under her will, and was therefore subject to a legacy duty under this act, notwithstanding the property itself was physically in New York state. It is apparent that the point to be determined here was not involved in or determined in that case.

In *Darcy* v. *Darcy,* 51 N. J. L. 140, this court affirmed a tax levied in Newark on a mortgage on lands in Kansas, the mortgagee residing in Newark and the bond and mortgage actually being held in Newark. The tax was levied under section 61 of the General Tax act of that time, providing that all real and personal estate within this state shall be liable to taxation at the full and actual value. There could be no

doubt that the mortgage was taxable under the general maxim of *mobilia sequuntur personam,* as well as from the fact that the personal property, the bond and mortgage, the things taxed, were physically present in this state.

The point decided in *King* v. *Reed,* 43 *N. J. L.* 186, was whether a *holder of a mortgage* was an owner of *real estate,* and the court decided he was not. It is true the learned judge who wrote the opinion remarks that a "mortgage is a personal chattel and has no *situs* but the domicile of the owner," but the question here is whether a *personal chattel is property,* and whether its *physical presence is an actual presence,* notwithstanding the foreign domicile of the owner.

*Dolman* v. *Cook,* 14 *N. J. Eq.* 56, was on a foreclosure of two mortgages, and the Chancellor, construing the Tax act of 1854, held that it did not include bonds and mortgages of persons not inhabitants of this state. The lands mortgaged were within the state, but the mortgagee was a non-resident, and, apparently, the bonds and mortgages were actually *without* the state.

*Crispin* v. *Vansyckle,* 49 *N. J. L.* 366, involved the right of a resident mortgagor of lands within the state to deduct the amount of the mortgage from the taxable value of the land. Here, again, not only was the mortgagee a non-resident, but the bond and mortgage were physically *without the state* and could not be taxed.

The case of *State Tax on Foreign-Held Bonds,* 15 *Wall.* 300, is discussed in its application to the Transfer-Inheritance Tax laws by Mr. Justice Holmes in *Blackstone* v. *Miller, supra.* He says: "There is no conflict between our views and the point decided in the case reported under the name of *State Tax on Foreign-Held Bonds,* 15 *Wall.* 300. The taxation in that case was *on the interest* on bonds *held out of the state. Bonds* and negotiable instruments *are more than merely evidences of debt.* The debt is inseparable from the paper which declares and constitutes it, by a tradition which comes down from more archaic conditions. *Bacon* v. *Hooker,* 177 *Mass.* 335, 337. Therefore, *considering only the place of the property,* it was held that *bonds held out of the state* could not

be reached. The decision has been cut down to its precise point by later cases. *Savings and Loan Society* v. *Multnomah Co.,* 169 *U. S.* 421, 428; *New Orleans* v. *Stempel,* 175 *Id.* 309, 319, 320."

Section 26 of the act in question (1909) defines property as "the interest of the testator * * * passing or transferred to the individual or specific legatee," &c. If, as we hold, a bond and mortgage is property, the interest in the ownership of the testator passes in this very thing by the will.

We have not overlooked the fact that the statute of New York was amended in 1911, and that this amendment works a complete reversal of the policy of the New York act of 1892. But that fact has no significance in this case.

These conclusions, in effect, dispose of every question argued.

The assessments under review, both upon the bonds and mortgages upon real estate within this state, and also upon the bonds and mortgages on property within the State of New York, will be affirmed, with costs.