ARTHUR B. MELLOR ET AL., EXECUTORS, &c., PLAINTIFFS-RESPONDENTS, v. JOSEPH KAIGHN, DEFENDANT-APPELLANT.

Argued June 28, 1916—Decided November 20, 1916.

1. The proceedings of an inferior tribunal are reviewable upon appeal when the court below has jurisdiction, and by *certiorari* when it exceeds its jurisdiction.
2. *Certiorari* is a prerogative writ by which the Supreme Court exercises jurisdiction to supervise the proceedings of inferior tribunals and governmental establishments.
3. The surrogate of a county in probating a will acts judicially and holds a court; this court, however, is not one of general jurisdiction, but is an inferior tribunal of special jurisdiction.
4. The jurisdiction of a surrogate, or surrogate's court, is purely statutory, extending to the probate of wills, the granting of letters of administration and guardianship, and certain other matters mentioned in the statute.
5. When a surrogate grants probate of a will his power is exhausted and his jurisdiction over the subject-matter is at an end, and he cannot open or vacate his decree for any cause.

On appeal from a judgment of the Supreme Court.

For the defendant-appellant, *Stackhouse & Kramer*.

For the plaintiffs-respondents, *Wilson & Carr*.

The opinion of the court was delivered by

WALKER, CHANCELLOR. On May 26th, 1914, William B. Mellor, of Camden county, executed a paper purporting to be his last will and testament. On October 24th, 1914, he died, and on November 6th, 1914, the paper was duly admitted to probate as his last will, and letters testamentary were issued thereon to Edgar Mellor and Arthur B. Mellor, the executors named in it. After the time limited for an appeal, and on December 9th, 1915, a petition was filed with the surrogate of Camden county by Joseph Kaighn, who alleged that at the time of the making of the will so admitted to probate the testator was not of sound and disposing mind and memory, and that the subscribing witnesses well knew that fact, and that at the time of the execution of that will the testator was insane and unable to make any intelligent disposition of his property; that the will was prepared by one of the subscribing witnesses who, in conjunction with the executors, procured its execution, although all of them knew that the testator was insane and without testamentary capacity. The petitioner further averred that on March 16th, 1910, William B. Mellor made, published and declared a paper-writing as and for his last will and testament, in which he appointed the petitioner executor; that the existence of that will first came to petitioner's knowledge on November 1st, 1915; that at the time of the making of that will the testator was of sound and disposing mind and memory and had full testamentary capacity; that the will dated May 26th, 1914, is not the last will and testament of William B. Mellor, but that the will of March 16th, 1910, is the true will of the testator. The petitioner prayed that the will of 1910 be admitted to probate and the petitioner granted letters testamentary thereon, and that the will of 1914 be revoked and set aside.

Upon the filing of this petition the surrogate of Camden county made an order requiring the executors named in it to show cause before him, the surrogate, why its prayer should not be granted. Thereupon Arthur B. Mellor and Edgar Mellor, the executors of the will which had been admitted to probate, entered a special appearance with the surrogate for the sole and only purpose of objecting to his jurisdiction to entertain the petition or make any order thereon other than to dismiss it for lack of jurisdiction. They also filed an answer reciting the special appearance and denying the jurisdiction of the surrogate to grant the relief prayed for. It appears that leave of court must be obtained to enter a special appearance (*Allman* v. *United Brotherhood of Carpenters,* 79 *N. J. Eq.* 150, 154; *affirmed, Ibid.* 641), and such was not obtained from the surrogate; but no point was made of this, nor could it very well have been, for the surrogate lacked jurisdiction in this case, and any answer challenging it would have properly raised the question.

Counsel for the petitioner gave notice of a motion before the surrogate to strike out the special appearance and answer, and, after hearing, the surrogate made such an order. Thereupon *certiorari* out of the Supreme Court was awarded by Mr. Justice Garrison to review the action of the surrogate in entertaining jurisdiction upon the petition. It was duly served and came on to be heard before the justice who granted it, who decided that the orders brought up by the writ should be set aside as steps in the exercise of a jurisdiction by the surrogate that does not exist.

*Certiorari* was the proper remedy. The proceedings of an inferior tribunal are reviewable upon appeal when the court below has jurisdiction, and by *certiorari* when it exceeds its jurisdiction. *Diament* v. *Lore,* 31 *N. J. L.* 220; *Richardson* v. *Smith,* 74 *Id.* 111. *Certiorari* is a prerogative writ by which the Supreme Court exercises jurisdiction to supervise the proceedings of inferior tribunals and governmental establishments. *Specht* v. *Central Passenger Railway Co.,* 68 *Atl. Rep.* 785; *affirmed,* 76 *N. J. L.* 631; *Orange* v. *Hussey,* 70 *Id.* 244; *In re Prudential Insurance Co.,* 82 *N. J. Eq.* 335.

The surrogate of a county in probating wills acts judicially and holds a court. *Steele* v. *Queen,* 67 *N. J. L.* 99. It is, however, not a court of general jurisdiction, but one of special jurisdiction. This, in effect, was asserted by Mr. Justice Fort in writing the opinion of the Supreme Court in Steel *v.* Queen, where he said (at *p.* 100) that Griffith puts "the surrogate's court" under "courts of peculiar jurisdiction." ·

In his opinion in *Hess* v. *Cole,* 23 *N. J. L.* 116, Chief Justice Green (at *p.* 121) observed that the jurisdiction of the Orphans Court, though limited, is not special; that it does not exercise a mere delegated authority for special purposes; that it is a regularly constituted tribunal of justice with broad and comprehensive powers, operating upon great and varied interests, and regulated by well-settled principles. This very language would indicate that the surrogate's court is not only one of limited but of special jurisdiction. The true distinction between courts is, such as possess general, and such as have only a special jurisdiction for a limited purpose. *Den* v. *Hammel,* 18 *Id.* 73.

In colonial times, and later, the surrogates were appointed by the ordinary as his deputies. *Cleven. & Keasb. Cts.* 128, 129; *Ex parte Coursen,* 4 *N. J. Eq.* 408; *In re Thompson,* 85 *Id.* 221, 261. In section 4, paragraph 2 of the constitution of 1844, the surrogate was made a constitutional officer and the method of his selection was provided for. This changed his former status of deputy to the ordinary and made him an independent officer, whose duties are prescribed by the legislature. His jurisdiction is purely statutory and extends to the probate of wills and grant of letters of administration and guardianship and to certain other matters mentioned in the statute. His powers and duties are now devolved and provided for in the present Orphans Court act. Revision of 1898; *Comp. Stat., p.* 3813. Section 13 of that act provides:

"The surrogates of the several counties of this state shall take depositions to wills and admit the same to probate and grant letters testamentary thereon; but in case doubts arise on the face of the will, or a caveat is put in against proving a will, or a dispute arises respecting the existence of a will,

the surrogate shall not act in the premises, but shall issue citations to all persons concerned to appear in the Orphans Court of the same county, which court shall hear and determine the matters in controversy."

In *Murray* v. *Lynch,* 64 *N. J. Eq.* 290; *affirmed,* 65 *Id.* 399, Chancellor Magie, sitting as ordinary, held that when a surrogate has acted upon an application for the probate of a will, and has made an adjudication and a decree thereon, the power conferred upon him has been exhausted and he may not thereafter issue citations requiring the parties to appear in the Orphans Court in respect to any controversy over the probate of the will.

And this court, in *Ryno's Executors* v. *Ryno's Administrators,* 27 *N. J. Eq.* 522, held that by the grant of probate the power of the surrogate is exhausted and his jurisdiction over the subject-matter is at an end; and also that if the probate of a will were irregular or voidable for any cause, the remedy was by appeal to the ordinary or by proceedings for the revocation of letters.

*In re Whitehead's Estate,* 85 *N. J. Eq.* 114, Leaming, Vice Ordinary, held that the ordinary had no jurisdiction to entertain proof of a will in solemn form as a means of setting aside a decree of probate of the surrogate who had acted within his original jurisdiction and from whose decree the statutory period of review had expired.

It cannot be doubted that if the time for appeal had not expired, the petition in this case, addressed to the surrogate and praying for the vacation of the probate of Mr. Mellor's will of 1914, would not have been proffered, but, on the contrary, an appeal would have been taken.

Mr. Justice Garrison, in his memorandum deciding the question before him in this case on *certiorari,* held that under the petition proffered to the surrogate, he was confronted with a dispute respecting the existence of the will, as to which his only function would be to cite the disputants to appear in the Orphans Court, unless it be held that by indirection he is clothed with a power that is expressly denied him by statute, and further, that the inquiry as to the alleged fraud

upon the surrogate was merely an attempt to alter and increase the statutory right of persons interested to take an appeal from the probate of a will, a matter that has not been left to judicial discretion.

*In the Matter of Clement's Appeal,* 25 *N. J. Eq.* 508, it was held by Chancellor Runyon, as ordinary, that the Orphans Court has power to revoke letters of guardianship obtained through false representations. But the Orphans Court is a court of general jurisdiction over the matters committed to it by statute. *Hess* v. *Cole, supra; Pyatt* v. *Pyatt,* 46 *N. J. Eq.* 285, 286; *Dunham* v. *Marsh,* 52 *Id.* 256, 261; *Vincent* v. *Vincent,* 70 *Id.* 272; *In re Hathorn's Will,* 97 *Atl. Rep.* 262.

*In re Evans' Will,* 29 *N. J. Eq.* 571 (at *p.* 575), Chancellor Runyon, as ordinary, mooted the question as to whether a surrogate might set aside his decree when made through fraud practiced upon him.

What was meant by this court in the assertion by Mr. Justice Green, speaking for it in *Ryno's Executors* v. *Ryno's Administrators,* 27 *N. J. Eq.* (at *p.* 525), that if the probate of a will is irregular or voidable for any cause, the remedy is by appeal or by proceedings for the revocation of letters—that is, what was meant by the observation "proceedings for the revocation of letters" we are not called upon to decide. The assertion of the learned judge was not directed to any issue before the court and was *obiter dictum.*

Nor is there anything in the remarks of Vice Chancellor Emery in *Vincent* v. *Vincent,* 70 *N. J. Eq.* 272 (at *p.* 274), to the effect that courts invested with probate jurisdiction have generally power to check and revise proceedings for probate tainted with mistake, fraud or illegality, indicating an opinion that the surrogates have that power. He was careful to say that probate courts have *generally* (which suggests qualification and exception), and did not say they had universally, the jurisdiction to set aside probate obtained through fraud; and, besides, he was not dealing with the surrogate's but the Orphans Court, and expressly held that it (the Orphans Court) was a superior court of general jurisdiction, and, therefore, has the power in question, and for that reason

he sustained a demurrer and dismissed a bill, having for its object the setting aside of the probate of a will proved in the Orphans Court.

The observation of McGill, ordinary, in *Straub's Case,* 49 *N. J. Eq.* 264 (at *p.* 265), that when the time within which an appeal may be taken from the order of a surrogate has elapsed, the judgment is a finality until it be disturbed by an attack upon it which should originate before the surrogate, is predicated upon *In re Evans, supra,* which is cited as authority. As shown above, it was not decided (In re Evans) that an attack upon a probate adjudged by a surrogate could be originated before him. On the contrary, the question was only mooted in the latter case. Therefore, the learned ordinary's assertion in the Straub case is without support.

The counsel for appellant argue that if the decision of Mr. Justice Garrison in the Supreme Court is right, a fraudulent decree, or one entered by inadvertence or mistake in a surrogate's court must remain of record always if the time for appeal has lapsed, which would enable parties interested in perpetrating a gross fraud to take advantage of it for all time if they could conceal the fraud during the period in which an appeal could be taken from the judgment of the surrogate. We do not say there is no remedy, nor are we called upon to make any deliverance on this question. It may be that there is a remedy in equity. See *Vincent* v. *Vincent,* 70 *N. J. Eq.* (at *p.* 274), and *Crawford* v. *Lees,* 84 *Id.* 324, 341.

We are clearly of opinion that the surrogate of Camden county exceeded his authority in entertaining jurisdiction of the petition to revoke probate, and that, therefore, the judgment of the Supreme Court setting aside his action must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 13.

*For reversal*—None.