ESSEX COUNTY SURROGATE'S COURT.

IN THE MATTER OF THE ESTATE OF WILLIAM H. KELL-
NER, DECEASED.

Decided December 27, 1932.

Proctor for the executors, *Nathan H. Berger.*

Proctors for the petitioner Jane Kellner, *Braelow & Tepper.*

William H. Kellner died on July 24th, 1930. His will, dated June 1st, 1928, and two codicils, each dated June 22d, 1929, were probated by the surrogate of Essex county on September 10th, 1930, following the usual informal probate practice in cases not referred to the Orphans Court by statute. At that time, Jane Kellner, a granddaughter of the decedent, was an infant. She became of age on March 26th, 1932. On August 13th, 1932, she filed a petition with the surrogate praying that the decree on probate, dated September 10th, 1930, be set aside. An order to show cause based on this petition was signed by the surrogate. On its return day, the proctor for the executors, under the will admitted to probate, questioned the juirsdiction of the surrogate in the premises. By agreement of all parties to the proceedings, it was stipulated that this question of jurisdiction should first be settled before any testimony or evidence might be received on the rule to show cause.

In 1916 the Court of Errors and Appeals of New Jersey, in an opinion by Chancellor Walker, in the case of *Mellor* v. *Kaighn,* 89 *N. J. L.* 543; 99 *Atl. Rep.* 207, held that the jurisdiction of the surrogate ended upon the granting of a decree for probate of a will and that he had no authority to open or vacate or change that decree. In 1917, the legislature passed the following act (*Pamph. L.* 1917, *ch.* 133) :

A supplement to "An act respecting the Orphans Court, and relating to the powers and duties of the ordinary, and the Orphans Court and surrogates." (*Rev.* 1898.)

1. The surrogates of the several counties of this state are hereby given the power and authority to open, vacate, modify or set aside or to enter as of a former time, a decree or order made in their court; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error, or other sufficient cause. The powers and authority conferred by this act must be exercised only in a like case and in the same manner as a court of record and of general jurisdiction exercises the same powers.

2. This act shall take effect immediately.

The petition to vacate was filed and the rule to show cause

was granted pursuant to the authority given in the above legislative enactment.

Since the 1917 enactment there have only been two decisions of the higher courts in which it is mentioned. In *McCormack* v. *Burns* (1918), 89 *N. J. Eq.* 274; 105 *Atl. Rep.* 70, the bill in equity prayed that a decree of a surrogate admitting to probate an alleged will might be set aside on the ground that the document was not, in fact, the last will of decedent, but was contrived by the defendant in fraud of the decedent and the complainants. Vice-Chancellor Lewis dismissed the bill in equity, holding that a Court of Chancery has no jurisdiction to try a case involving fraud in the procurement of a will. In the course of his opinion (pages 276, 277) he refers specifically to the act of 1917 and then says:

"It may be that under this act the complainants, if they succeed in establishing fraud in the procurement of this will, might find their remedy; but I am not called upon to pass on the question of whether, in this case, they can take advantage of that act, or whether it would be ocnstitutional to allow them to do so."

Subsequently, in 1921, Vice-Ordinary Leaming decided the case of *In re Frank's Will,* 93 *N. J. Eq.* 405; 114 *Atl. Rep.* 857. Here the surrogate of Camden county had, on November 4th, 1918, admitted to probate the will of Frank and issued letters of administration *cum testamento annexo* to Frank's mother, on the representation that the decedent died a resident of Camden county. His widow, Esther, on November 26th, 1918, petitioned the said surrogate to revoke the decree of probate on the ground that the decedent was actually a resident of Pennsylvania and that the representation by his mother to the contrary was false. An order was made by the surrogate directing all interested persons to appear for a hearing on the petition. A motion to dismiss the petition was denied by the surrogate, and, after a hearing, he signed an order revoking and setting aside the original decree of probate. An appeal was taken from this order to the Orphans Court where it was affirmed, and the appeal was then carried to the Prerogative Court. Vice-Ordinary Leaming says:

"The single question which has been presented to this court for consideration herein is whether an appeal could be taken to the Orphans Court from the order of the surrogate revoking the order of probate and the letters issued by him thereon. The Orphans Court held, and respondent in this appeal contends, that any appeal from that order should be to the Prerogative Court.

"Prior to the act of March 26th, 1917 (*Pamph. L.* 1917, *p.* 293), the surrogate could not entertain a petition to vacate an order of probate which had been made by him. *Mellor* v. *Kaighn,* 89 *N. J. L.* 543; 99 *Atl. Rep.* 207. *It is here conceded that that act conferred that power."*

In the above case the vice-ordinary held that an appeal from such an order made by the surrogate should be made directly to the Prerogative Court.

In addition to the above cases, this statute was involved in cases before the Surrogate's Court, in which opinions were filed. In the case of *In re Hunter,* 40 *N. J. L. J.* 227, the petition alleged that letters of administration had been issued to an administrator who falsely represented to the surrogate that petitioner had renounced her right to such administration and the petition prayed for a revocation of the decree by which such letters of administration had been issued. Surrogate Stickel of Essex county, in his opinion, said:

"The act before quoted, is almost an exact copy of the New York law on this subject, and was evidently designed to give to the surrogate the power which the Court of Errors and Appeals, in Kaighn *v.* Mellor had found the surrogate had not, till then, possessed, and to provide an inexpensive and summary method of review, where the decree of the surrogate had been entered by mistake, or secured by fraud. That was the purpose of the act, as shown by the statement attached to Assembly Bill No. 51, the bill which, upon being approved by the legislature and governor, became the act above quoted."

In the case of *In re Bradford* (1919), 43 *N. J. L. J.* 14, the surrogate had issued letters of administration on July 20th, 1917, on the estate of Bradford who had died on March 27th, 1916. On August 5th, 1919, a petition was filed with

the surrogate, praying a revocation of the letters of administration on the ground that administration had been granted upon a false representation as to the domicile of the decedent.

Surrogate Isherwood of Essex county said:

"A consideration of the cases above cited (referring to the New York cases), is convincing that, for the purposes enumerated therein, the act of 1917 confers upon the Surrogate's Court all the powers of a court of general jurisdiction, and it is too well settled to require the citation of authorities that a court of general jurisdiction may revoke its own decrees, made where it was without jurisdiction over the subject-matter of the proceedings before it." *Githens* v. *Goodwin,* 32 *N. J. Eq.* 286; *Trimmer* v. *Adams,* 18 *Id.* 505; *In re Isaac Lawrence,* 7 *Id.* 215.

\*       \*       \*       \*       \*       \*       \*

"From what has gone before, the conclusion is irresistible that the act of 1917 confers upon the surrogate all of the powers of a court of general jurisdiction for the purposes enumerated in that statute \*   \*   \*."

In 1930, the present surrogate of Essex county, decided in the case of *In re Catherine Crociana* (not reported), that administration granted to one who falsely alleged himself to be the husband of the decedent should be set aside upon petition of a brother of the decedent. The surrogate there acted under the authority of the act of 1917, which he held was constitutional.

The proctor for the executors insists that the statute of 1917 is unconstitutional. In the early history of New Jersey, the surrogate was a deputy of the ordinary and exercised general probate jurisdiction. In 1784 the legislature passed an act providing for one surrogate or deputy for each county of the state and also established a new county court, called the Orphans Court, which, among other powers, was vested with certain of the powers previously exercised by the surrogate, such as hearing and deciding disputes about the validity of wills and rights of administration. *In re Coursen's Will,* 4 *N. J. Eq.* 410, 414. At that time, the *statute* deprived the surrogate of some of his jurisdiction. There

was no reference to surrogates in the first constitution of our state, adopted in 1776, although the governor was therein declared to be "ordinary and surrogate general." The constitution of 1844, however, specifically made the surrogates of counties constitutional officers (constitution, article 7, paragraph 2, section 6), but it did not specify the duties or the powers of the surrogate. It did change his former status of deputy to the ordinary and made him an independent officer, whose duties are prescribed by the legislature. His powers and duties are now devolved and provided for in the present Orphans Court act (3 *Comp. Stat., p.* 3809), and supplements thereto. In *Mellor* v. *Kaighn, supra,* the court sustains the above statements but found that the legislature had not granted to the surrogate the authority or power to set aside a decree of his court. The court there held that the Surrogate's Court at that time was not one of general jurisdiction but was an inferior tribunal of special jurisdiction. In 1917, the act (chapter 133) under which the petition in this case was filed, was passed as a supplement to the Orphans Court act. It specifically provides that the surrogate is given the power and authority to open, vacate, modify or set aside or to enter as of a former time, a decree or order made in his court; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error, or other sufficient cause. It further provides that the powers and authority conferred by the act must be exercised only in a like case and in the same manner as a court of record and of general jurisdiction exercises the same powers. It thus appears that the act to that extent places the Surrogate's Court upon a par with other courts of general jurisdiction. Section 6 of the constitution of 1844 authorizes the legislature to establish, alter or abolish inferior courts of the state, which certainly includes the authority to enlarge or diminish the powers of any such inferior court.

The act of 1917 was modeled after a similar act in New York. (Section 2490, subdivision 6 of New York Code of Civil Procedure, formerly section 2481, subdivision 6 of the code, now section 20 of the Surrogate's Court act.) The

courts of New York have also held, as in *Mellor* v. *Kaighn,* *supra,* that the Surrogate's Court is a tribunal of special and limited jurisdiction which can exercise only the powers prescribed by statute and such incidental powers as are requisite to the execution of the powers expressly given. *Riggs* v. *Cragg,* 89 *N. Y.* 480, 488; *McNulty* v. *Hurd,* 72 *N. Y.* 518, 520. Yet the courts of that state have also held that the statute, from which our 1917 statute is copied, confers full power and authority upon the surrogate for cause to vacate, revoke or alter a decree made in his court. *Costello* v. *Costello,* 137 *N. Y. Supp.* 132; *In re Henderson,* 157 *N. Y.* 423; *In re Severance,* 106 *N. Y. Misc.* 710; *In re Flynn,* 136 *N. Y.* 287; *In re Coogan,* 59 *N. Y. Supp.* 111; *affirmed,* 162 *N. Y.* 613; *In re Underhill,* 117 *N. Y.* 471. It is presumed that when our legislature enacts a provision following a statute of another state in which the language of that statute has received judicial construction, it intended such judicial construction to be the true interpretation of the words of the act so adopted. *Neilson* v. *Russell,* 76 *N. J. L.* 655; 71 *Atl. Rep.* 286; *Rulkowsky* v. *Bozza,* 77 *N. J. L.* 724; 73 *Atl. Rep.* 502; *Clay* v. *Edwards,* 84 *N. J. L.* 221; 86 *Atl. Rep.* 548; *Hopper* v. *Edwards,* 88 *N. J. L.* 471; 96 *Atl. Rep.* 667; *In re Christies Estate,* 87 *N. J. Eq.* 303; 101 *Atl. Rep.* 64; *Bugbee* v. *Van Cleve,* 99 *N. J. Eq.* 825; 134 *Atl. Rep.* 646.

The powers and authority exercised by the surrogate as well as the Orphans Court, are not determined by the constitution; the legislature, in its discretion and wisdom, may add to, or diminish, the powers of either of these courts at any time. It does not contravene the terms of the constitution of 1844 if the legislature grants to the surrogate the power to open, modify, vacate or set aside a decree or order made by him for good cause, such as "fraud, newly discovered evidence, clerical errors or other sufficient cause."

It is also urged that the provisions of the statute of 1917 conflict with the provisions of the Orphans Court act which provide that only that court shall hear and decide disputes respecting the existence of a will. This is a misconception of

the purpose of these two acts. The 1917 statute expressly grants to the surrogate the authority to vacate, open, modify or set aside a decree of his court or to grant a new hearing "for fraud, newly discovered evidence, clerical error or other sufficient cause." It does not authorize the surrogate to settle "a dispute respecting the existence of a will." But it does grant to him the right to open, vacate or set aside a decree obtained in his court and grant a new hearing for fraud, newly discovered evidence, clerical error or other sufficient cause. Thus if it appeared that his decree had been entered as a result of fraud or error, he may set aside that decree. If then a dispute arises as to the existence of the will, the surrogate would be compelled to issue the necessary citations to bring on that dispute for hearing and decision by the Orphans Court.

It is also urged that, in view of the fact that the time stipulated in the Orphans Court act for an appeal to the Orphans Court from the decree of the surrogate has long since expired, the surrogate now lacks any authority to open or set aside his decree. This again is founded upon a misconception of the purpose of the act of 1917 and of section 202 of the Orphans Court act. The provisions of the act of 1917 relate solely to the right of the surrogate to open, vacate and set aside his former decree for good cause as shown in the statute. The right of appeal, provided in section 202 of the Orphans Court act, reserves to an interested party the right to a hearing as to the existence of a will or as to a contested administration. The limitations of time for an appeal from the surrogate's decree to the Orphans Court have little bearing upon the right, under the 1917 statute, of the surrogate to correct his decree on a showing of fraud, newly discovered evidence, clerical error or other sufficient cause. The probate of a will in common form, according to our practice in New Jersey, is in the nature of an *ex parte* proceeding. No notice is required to be given to heirs or beneficiaries; the will is merely offered for probate by the executor and the witness' proofs are taken by simple affidavit.

The form of simple affidavit used in common probate in Essex county is as follows:

"State of New Jersey, County of Essex, ss.

One of the witnesses to the annexed writing, purporting to be the last will and testament of . ..... , the testator therein named, deceased, being duly sworn on ... oath, says that .... saw the testator sign and seal the said annexed writing, and heard .... publish, pronounce and declare the same as and for ... last will and testament.

That at the time of the doing thereof the said testator was of sound and disposing mind, memory and understanding, as far as this deponent knows and verily believes; that . .. ..., the other subscribing witness thereto, ..... present at the same time with this deponent when the said will was signed by the said testator and by .... published and declared as and for .... last will and testament as aforesaid; and that the said .. .... and deponent subscribed their names to said will as witnesses in the presence of said testator and of each other, at the request of the said testator.

Sworn ........ 193. , before me,

Special Probate Clerk."

It will be noticed that the witness therein says that he saw the testator sign the will and heard him publish and declare it as his last will and that at the time of the execution of the will the testator was of sound and disposing mind, so far as the witness knows, and that the other subscribing witness was present at the same time with deponent when the will was signed and published by the testator and that the witnesses signed their names as witnesses in the presence of the testator and each other, at the request of the testator.

If a fraud is thereby perpetrated upon the surrogate, it would seem from the wording of the 1917 statute, that he has authority at any time to open and set aside his decree. No case in New Jersey except *In re Bradford, 43 N. J. L. J.* 14, has yet been decided upon this specific point. In New York, however, it has been held under the similar statute, that the surrogate's power and authority to reopen and set aside a decree is not limited by the time limitation for an appeal. *In re Henderson, supra; In re Flynn, supra;*

*In re Severance, supra; In re Morgan,* 215 *N. Y.* 703. In the New Jersey case of *In re Bradford, supra,* Surrogate Isherwood held that no laches being proven, the delay of two years in making the petition to open and set aside his decree was not fatal. In the case of *McCormack* v. *Burns, supra;* 105 *Atl. Rep.* 70, in which Vice-Chancellor Lewis declines to pass upon the efficacy or constitutionality of the 1917 act and holds that equity will not entertain a case of fraud in the procurement of a will, he says:

"If the will should be probated in the Prerogative Court, probate in solemn form may be allowed and the probate set aside on sufficient cause being shown. This may be done on the Prerogative Court, even though years may have elapsed since the will was admitted to probate in common form. But this is not true where the will is admitted to probate by the surrogate."

It would seem from the wording of the 1917 statute that the surrogate now has similar power and authority to set aside his decree of probate in common form where sufficient cause is shown.

In the case *In re Van Wagoner's Estate,* 97 *Atl. Rep.* 893, Foster, as vice-ordinary, considered an appeal from the Orphans Court involving its decree permitting an executor's final accounting to be opened thirty-one years after its entry to correct an error therein. He cites section 27 of the Orphans Court act wherein it is provided that a decree on settlement of account is conclusive, "excepting * * * in cases where a party applying for a resettlement shall prove some fraud or mistake therein, to the satisfaction of the Orphans Court." He then says (at *p.* 895):

"And it has been held that by virtue of this provision, the Orphans Court has power to correct mistakes of law as well as mistakes of fact. *Davis* v. *Combs,* 38 *N. J. Eq.* 473; 39 *Id.* 336; *Pyatt* v. *Pyatt,* 44 *Id.* 491; 15 *Atl. Rep.* 491; *Liddell* v. *McVickar,* 11 *N. J. L.* 44; *Jackson* v. *Reynolds,* 39 *N. J. Eq.* 313. The application to open an account in case of alleged fraud or mistake is one addressed to the discretion and must be proved to the satisfaction of the court. *In re Baker,* 61 *Id.* 592; 47 *Atl. Rep.* 1046."

The very purpose of the act of 1917 is to permit the surrogate to correct a decree made by him where "fraud, newly discovered evidence, clerical mistake or other sufficient cause" require such a correction in the attainment of justice. As above stated, probate in common form is *ex parte;* the proceedings are informal and often without the aid of counsel; it lacks the benefit of cross-examination in the solemnity of a regular court room which impresses witnesses and tends to extract the full truth of the matter. A court of general jurisdiction, where trials are conducted in a solemn court room, with aid of counsel and subject to rigorous cross-examination, has inherent power at any time to open, modify, vacate and correct its decree in the interest of justice where fraud, newly discovered evidence or manifest error is found by the court. If this be true of a court wherein all possible safeguards are thrown around the litigants, it is all the more reasonable to assume that in the case of a surrogate's decree, the legislature intended to give, and did give by the act of 1917, to the surrogate the necessary power and authority to correct error in his decree for good and sufficient cause shown.

The executors also urge that the surrogate has lost jurisdiction in this case because the estate of this decedent has been before the Orphans Court on an accounting, which accounting was approved and commissions and fees allowed thereon. It is evident that the question now presented before the surrogate, namely, fraud in the procurement of the probate of the will, could not have been before the Orphans Court on the account. In that proceeding, the Orphans Court considers merely the correctness of the account. If the will was probated in the common form as a result of fraud perpetrated upon the surrogate, and the surrogate, acting under the act of 1917, should set aside the probate, the existence of the will would then be determined by the Orphans Court, in case of contest. If it should decide against the existence of the will and enter its decree accordingly, then, under section 127 of the Orphans Court act, it has ample power and authority to rectify any error, mistake or confusion caused by its former decree on the accounting.

The executors also urge that chapter 133 of the laws of 1917 has been repealed by the enactment of chapter 370 of the laws of 1931. This latter act merely added to section 13 of the Orphans Court act referring to the issuance by the surrogate of citations in certain cases so that the matters in controversy might be determined by the Orphans Court, the following words:

"Provided, that where a caveat has been filed against the probate of any will, the caveator shall cause citations to be issued thereon and bring the same on for hearing before the Orphans Court within six months from the date of filing said caveat; otherwise the surrogate shall and is hereby empowered to probate said will."

It is clear that the only purpose of the legislature in the enactment of this amendment to section 13 of the Orphans Court act was to expedite the hearing of a contested will case. If the legislature had intended to repeal the act of 1917, it would have done so in definite language. Repeal by implication is not favored, and, where the later statute is not necessarily repugnant, the intent to repeal is not implied. *Terrone* v. *Harrison,* 87 *N. J. L.* 541; 94 *Atl. Rep.* 600; *Winne* v. *Casale,* 99 *N. J. L.* 345; 123 *Atl. Rep.* 533; *affirmed,* 100 *N. J. L.* .291; 126 *Atl. Rep.* 324; *First National Bank* v. *Bianchi,* 106 *N. J. Eq.* 333; 150 *Atl. Rep.* 774; *Adams* v. *Plainfield,* 161 *N. J. L.* 282; 161 *Atl. Rep.* 647. And it has been held that nothing short of an irreconcilable conflict between two statutes works a repeal by implication. *Title Guarantee Land Co.* v. *Paterson,* 76 *N. J. Eq.* 539; 74 *Atl. Rep.* 794; *State* v. *Garris,* 98 *N. J. L.* 608; 121 *Atl. Rep.* 292. It has been also held in numerous cases that where both acts can, by reasonable construction, be upheld, the latter act will not operate as a repeal of the former. *Britton* v. *Blake,* 35 *N. J. L.* 208; *affirmed,* 36 *Id.* 442; *Trustees, &c.,* v. *Trenton,* 30 *N. J. Eq.* 618; *affirmed, Ibid.* 667; *Winne* v. *Casale, supra.*

The executors also urge that the petition does not sufficiently allege fraud in its other allegations and should therefore be dismissed. Their proctor, at the hearing, entered

a special appearance for the purpose of challenging the jurisdiction of the surrogate. In his brief, he specifically attacks the petition, claiming that its allegations are insufficient to support it. This must be considered as a demurrer or a motion addressed to the pleadings, rather than to the jurisdiction. As such it amounts to a general appearance in the cause and the executors have thereby waived objections to the jurisdiction of the surrogate to hear the matter. *Bird* v. *Moth-K-L Co.,* 1 *N. J. Mis. R.* 251; 140 *Atl. Rep.* 13; *Sayre and Fisher Co.* v. *Griefen,* 72 *N. J. L.* 1; 60 *Atl. Rep.* 513; *Albert* v. *Clarendon,* 53 *N. J. Eq.* 623; 23 *Atl. Rep.* 8.

The authority of the surrogate under the 1917 statute to set aside his decree must be based upon "fraud, newly discovered evidence, clerical error or other sufficient cause." He has no jurisdiction to determine the "existence of a will," this being reserved by statute to the Orphans Court. In the petition filed in this matter, there is no allegation of clerical error, and the claim of the petitioner must rest upon the grounds of fraud or newly discovered evidence. In order to confer jurisdiction upon the surrogate, such fraud or newly discovered evidence must relate to the act of probate and not to the existence of a will. In short, it is essentially a fraud upon the surrogate which establishes his authority to act under this statute in this case. Our consideration of the petition must therefore be limited to this one question. The paragraphs of the petition which generally allege lack of mental capacity either in the procurement of a will, or an undue influence and improper execution of a will, all attack the "existence of a will" which comes within the jurisdiction of the Orphans Court, rather than that of the surrogate. The eighteenth paragraph of the petition alleges that the affidavits filed in the common probate of this will were untrue in fact in that the decedent did not know the contents of this will; that he believed the contents to be different; that he did not request the witnesses to sign as such; that there was no publication by the testator and that the witnesses did not sign in the presence of each other. If the witnesses falsely swore concerning the necessary requisites to the execution of the will, then a fraud may have been perpetrated upon the sur-

rogate in the probate of this will. If, however, they told the truth as to their recollection of the events attending the execution of the will, then they committed no such fraud, even though others might testify to the contrary. It seems to this court that this paragraph sufficiently raises the question of fraud upon the surrogate to warrant the taking of evidence as to the truth of the matters alleged therein, especially in so far as it relates to the probate of the will. It does not seem material to the limited issue before this court to inquire into the belief of the testator as to the contents of the will; this might be very pertinent on an appeal to the Orphans Court but has little bearing upon the question of fraud upon the surrogate. As to the failure of the witnesses to sign in the presence of each other, the question has not been decided in New Jersey by its highest court. *Clark* v. *Clark*, 64 *N. J. Eq.* 361; 52 *Atl. Rep.* 225.

ANDREW J. WHINERY,
*Surrogate.*