HENRY A. HURLBUT and CHARLES G. LANDON, surviving executors of the will of BENJAMIN H. HUTTON, deceased,

*v.*

CHARLES G. HUTTON et al.

1. Where a testator, by his will, directs that certain debts, for which the testator is secondarily responsible, and which are secured by mortgage upon lands of the original debtor, shall be paid, and that the mortgages shall be charged to a specified share in the distribution of his estate, the executors will not be allowed credit for the payment of those debts until they secure assignments of the mortgages, and are in position to charge themselves with those mortgages for the purposes of distribution.

2. Where allowance is asked for the payment of a judgment, and exceptants desire to object to the allowance because the judgment was fraudulently and

Hurlbut v. Hutton.

collusively suffered to be procured by the accountants, their exception should specify facts from which fraud or collusion may be inferred.

3. If executors, in bad faith, allow a judgment to be recovered against the estate they represent, for the purpose of unduly charging it, they will not be allowed credit for the payment of the judgment in their account.

4. Executors are entitled to the advice and services of counsel and attorneys, in matters where it is necessary to invoke their professional skill, and to reasonable payments as compensation therefor, but they will not be allowed such payments for work that does not require that skill, and which they might themselves do. If, without prudent scrutiny, executors pay extravagant bills for legal services, they will not be allowed, upon their accounting, more than would have been reasonable compensation for those services.

On exceptions to Master's report.

*Mr. Thomas N. McCarter*, for Charles Gordon Hutton, Adele, Marquise de Portes, Anna, Countess de Moltke-Huitfeldt, Marquis de Portes and Comte de Portes.

*Mr. Benjamin Williamson*, for Adele, Marquise de Portes.

*Mr. Frederick Frelinghuysen*, for Marquis de Portes and Comte de Portes.

*Mr. Cortlandt Parker* and *Mr. Edward H. Landon*, for the executors.

The Chancellor.

The exceptions to be considered are to the Master's report upon an account of the executors of the will of Benjamin H. Hutton, deceased.

The first exception is to the allowance of a payment of $38,-254, alleged to have been made to H. Sieber & Co., of Paris, the successors of Messrs. Seydoux, Sieber & Co., on December 31st, 1884.

This payment is disputed on two grounds. The first of these grounds is, that the moneys paid were not a debt of the testator, and therefore should not be charged against his estate.

By reference to letters of the testator, in the years 1875 and 1876, to Messrs. Seydoux, Sieber & Co., a firm of manufacturers

in Paris, it appears that two mortgages for one hundred thousand francs each, upon estates of the Marquis de Portes (to whom the testator's daughter Adele was married), were held by that firm, and that Mr. Hutton had bound himself to their payment. The testator's books of account verify the statements of his letters, and exhibit the indebtedness unsettled at his death.

It appears, also, that the testator had an account with this firm which he termed "account current." To this account the semi-annual interest upon the mortgages was debited. Statements of this account were rendered at stated periods, and settled between Mr. Hutton and his French correspondents.

The mortgages, and the testator's guarantee of them, antedate his will, which was made on June 1st, 1868.

By his will, Mr. Hutton recognized his obligation to Messrs. Seydoux, Sieber & Co., and made the following provisions:

" I have heretofore become responsible for certain sums of money loaned to the Marquis de Portes (husband of my daughter Adele), by Auguste Seydoux, Sieber & Company, on his estate of Portes, in or near Mire Poix, France; and as I may make further loans and advances on said estate, or may purchase the same, it is my will that the whole of such loans, advances or purchase-money shall form part of and be deducted from the share or interest of my daughter Adele in and to my residuary estate, as provided for as before mentioned, and that the same and the securities taken upon such loans, be assigned and transferred to her as and for her sole and separate estate aforesaid, and be subject in all things to the provisions of my will in respect to her said share. In the event of my purchasing or becoming the possessor of the said estate of Portes, in France, I give and devise the said estate of Portes to my daughter, if she survives me; if not, to her issue by the said Marquis de Portes. If my daughter Adele shall not survive me or shall die without issue, then the said estate of Portes shall go to my issue and their heirs; or, if there shall, at the time or her death, be no issue of mine living, then to my next of kin in equal shares *per stirpes.*"

On July 28th, 1874, after the will was made, the Marquis de Portes executed, in favor of Mr. Hutton, an instrument known to the French law as an antichresis, the legal effect of which was to put him in the possession of the estate de Portes (which consisted of about three thousand two hundred acres of land, upon which were farms, mills, and other establishments for revenue),

Hurlbut v. Hutton.

with the right to receive its rents, issues and profits, but subject to the duty of paying from the income all governmental impositions on the estate and the interest upon encumbrances, the expense of keeping improvements in repair, and of maintaining insurance thereon. The surplus revenue was to be applied, first, to the payment of the interest upon the principal moneys advanced upon the antichresis, and then to the reduction of that principal. The moneys secured, to be repaid by the antichresis, were two hundred and eighty thousand francs, loaned by Mr. Hutton to the Marquis de Portes, and such moneys as should be appropriated by Mr. Hutton to the betterment and setting in good order of the estate of de Portes, from a maximum credit of one hundred and fifty thousand francs thereby opened by him in favor of his son-in-law. The moneys of the credit account were to pass through the hands of Messrs. Seydoux, Sieber & Co.

It appears that, out of the two hundred and eighty thousand francs thus loaned, Mr. Hutton was repaid all the interest that, up to that time, he had paid to Messrs. Seydoux, Sieber & Co., through his "account current," above referred to, upon the mortgages that they held against the estate de Portes. After that time, the interest he thus paid was charged to the account of the antichresis. The moneys advanced upon the antichresis did not pay the principal of the mortgages held by Messrs. Seydoux, Sieber & Co. As Mr. Hutton states in his will, he was responsible for that principal. I think it was the duty of the executors to discharge the estate from its liability by paying the mortgage debts, taking an assignment of the mortgages.

The second ground of objection to the allowance asked, is, that the executors have not obtained an assignment of the mortgages for which they have paid.

The will of Mr. Hutton contemplates that the Seydoux, Sieber & Co. mortgages shall become part of the residue of his estate, and shall be apportioned to his daughter Adele, in the distribution of that residue, and be assigned and transferred to her. In *Marquis de Portes* v. *Hurlbut, 17 Stew. Eq. 517*, the construction to be given to the clause of the will which I have quoted, was considered by the court of errors and appeals of this

20

Hurlbut *v.* Hutton.

state, and Chief-Justice Beasley, who wrote the opinion of the court, said : " The respondents [the executors of the will] must pass to the appellant [Adele, the Marquise de Portes] securities for all sums of moneys that they charge against her."

I think that, under the will, and, indeed, in the absence of the will (because Mr. Hutton's obligation was simply the guarantee of the secured debt of another), the original security of the debt, the mortgages, should be transferred to the executors or to the Marquis de Portes, before the executors should be given credit for their payment.    They are to form part of the residuary estate which the executors are to distribute, and are to be passed to Madame de Portes in that distribution.    The executors, then, are not in position to be allowed for the payment of the mortgages until they can charge themselves with those instruments. As the case stands, the exception will be allowed.

The second exception is to the allowance asked for the following items of discharge :

" 1885.

| | | |
|---|---|---:|
| May 1st. | E. S. Dakin, referee in *Landon* v. *Whiting* | $1,000.00 |
| May 4th. | E. H. Landon, attorney, *Landon* v. *Whiting* | 2,108.71 |
| May 4th. | J. B. Whiting, attorney, *Landon* v. *Whiting* | 2,065.25 |
| Oct. 28th. | C. G. Landon, decree of court | 12,000.00 " |

Charles G. Landon was a brother-in-law and partner of Mr. Hutton, and is one of the executors of his will.    During Mr. Hutton's absence in Europe, under a general power of attorney, he managed Mr. Hutton's affairs, and in so doing collected and disbursed several hundred thousands of dollars.    Nothing was said between him and Mr. Hutton about compensation for his services.    It was embarrassing to his co-executors, Messrs. Hurl- . but and Whiting, to audit his accounts and agree with him upon the compensation he should receive, or to decide that the circumstances of his employment were such that he was not entitled to payment; consequently, a suit was resorted to for the purpose of having his accounts passed upon by a court, and to settle the question of compensation.    The result of the suit was a judgment against the executors for the items above stated.    From a

·copy of the decree in that proceeding, it appears that the first three of the items in dispute were allowances, which were made part of the judgment, and that the last item was the compensation of Mr. Landon, fixed by the judgment. The attorneys therein were, respectively, the son of Charles G. Landon, and John N. Whiting, two of the executors. If it were not for the existence of the judgment referred to, it would be proper to consider how far the executors were justified in mulcting Mr. Hutton's estate in so expensive an examination of Mr. Landon's accounts. There had been no dispute concerning them, and there seems to be no sufficient reason why the executors did not, themselves, examine them. They were business men, and accustomed to deal with just such matters. Though their relations to Mr. Landon made their task a delicate one, their duty to the estate would seem to require them to perform it. But, if the judgment was not suffered to be recovered by the executors or their agents, in bad faith to the estate, collusively and fraudulently, I must accord force and credit to it, and allow credit for its payment.

The judgment has not been proved. A copy of the final decree, I am informed, has been used by the Master, but it nowhere appears that the judgment record has been duly exemplified and offered in evidence. In this respect, the accountants' proofs are deficient. The exceptants attack the judgment as having been recovered fraudulently and collusively, and complain that the Master rejected their offer so to prove. Unfortunately, their exceptions to the master's report alleged the judgment to be " fraudulent and collusive, and therefore void," and their offer to the Master seems to have been made in the same general terms. An objection of this kind should specify facts from which fraud or collusion may be inferred, and not rest upon the general, vague and uncertain language of the exceptions and offer. I think that the offer before the Master, as well as the exceptions, were and are, insufficient. There can be no objection to an inquiry, under proper exception, as to the good faith of the executors to the estate of Mr. Hutton, touching this judgment. If it was the product of bad faith on their part, they cannot be allowed for its payment. This is not an inquiry as to the

validity of the judgment between Mr. Landon and the estate. The judgment has been paid, and the executors now ask credit for their payment of it. If the judgment was not the product of their bad faith to the estate, they should have the desired credit; but if it was concocted by them, or with their assent, for the purpose of charging the estate unduly, they should not be allowed the credit they ask.

In view of the deficiency of the accountant's proofs, and of the general and uncertain objection to the judgment, I think that the question of the allowance of these items should be referred back to the Master. I will direct such reference back, and order that due proof of the judgment record be made; and that, then, the exceptants may file objections in writing to the allowance asked, which shall fully apprise the accountants of the fraud and collusion which, they claim, resulted in the procurement of the judgment, and may offer proofs to sustain the charges they may make in their objections. The Master will be directed to return and file all proofs with his report.

The last two exceptions are to the allowance of several payments to lawyers for services to the executors. The executors are undoubtedly entitled to the advice and services of counsel and attorneys in matters where it is necessary to invoke their professional skill, and to the allowance of reasonable payments in the compensation of such gentlemen; but they will not be allowed for payments to attorneys for work that does not require professional skill, and which the executors themselves may as capably do. If executors, without prudent scrutiny, pay extravagant bills for legal services, they will not be allowed upon their accounting, more than a sum that would have reasonably compensated for the services.

The first of the exceptions now considered, is to the allowance of $1,502.40 paid to lawyers for supervising the probate of the will and its codicils, in New York and New Jersey. It is alleged that several hundred dollars were paid to other lawyers for assistance in the same work. The second exception is to the allowance of over $2,000 for procuring a decision of the supreme court of New York, upon the question whether the two surviv-

ing executors of Mr. Hutton's will may sell his real estate. The case was agreed upon for the. purpose of having that question settled. I believe the payments excepted to, have been extravagant and excessive, but the testimony taken is insufficient to enable me to say what would have been reasonable for the services rendered. I will refer it back to the Master to take further testimony, so that it may be determined what sum would have been reasonable compensation for those services. He will be directed to return this evidence to the court.