In the matter of the appeal of the executors of HENRY I. DITTMAN, deceased, for review of an inheritance tax.

[Decided· May 10th, 1917.]

1. The appeal to the ordinary from an assessment of a·transfer tax, under the Inheritance Transfer Tax act (*P. L. 1909 p. 334 § 18*) is an appeal to the prerogative court, because the ordinary is the judge of that court and the proceedings are in that court.

2. Although the office of vice-ordinary is the creature of statute, the jurisdiction· of the vice-ordinaries arises from reference to them of matters by the ordinary in virtue of his inherent powers, and· their jurisdiction is complete by delegation from him.

3. The giving of an appeal to the ordinary in the Inheritance Transfer Tax act is a valid· legislative enactment.

4. An appeal is a judicial proceeding cognizable in a court.

5. *Semble:* That the appeal to the ordinary provided for in the Inheritance Transfer Tax act (*P. L. 1909 p. 334 § 18*) makes him a statutory tribunal, and that an appeal from a decree of the prerogative court in a case under that act is reviewable by *certiorari* in the supreme court instead of by appeal to the court of errors and appeals.

On appeal from an assessment of a transfer tax.

*Mr. Maximilian T. Rosenberg,* for the appellant.

*Mr. Herbert Boggs,* assistant attorney-general; for the state.

LEWIS, VICE-ORDINARY.

From an inheritance transfer tax upon the estate passing under the will of the late Henry I. Dittman, deceased, his executors appeal to the ordinary, under section 18 of the Inheritance Transfer Tax act. *P. L. 1909 p. 334.* That section provides that any person or corporation dissatisfied with an appraisement or assessment under the act may appeal therefrom to the ordinary.

The appellants, Dittman's executors, contend that, constitutionally, they could not be compelled to appeal to the ordinary; that they could have recourse to a writ of *certiorari* to review

the assessment of which they complain; that the ordinary is an official to whom they are permitted to resort as an umpire by consent of the state.

The respondent, the comptroller of the treasury, contends that on this appeal the ordinary does not sit as such, exercising the powers and jurisdiction of the ordinary or of the prerogative court; that the appeal is not to the prerogative court and that the petition is improperly so entitled; and, also, that the ordinary cannot refer the matter to a vice-ordinary. These contentions are unsound.

The ordinary is the judge of the prerogative court, and, consequently, the court itself. The constitution so provides. Article 6, section 4, paragraph 2.

In England, in former times, the ordinary and the judge of the prerogative court were different functionaries. In 2 Bl. Com. 509, the learned author says:

"If all the goods of the deceased lie within the same jurisdiction, a probate before the ordinary, or an administration granted by him, are the only proper ones; but if the deceased had *bona notabilia*, or chattels to the value of a hundred shillings, in two distinct dioceses or jurisdictions, then the will must be proved, or administration taken out, before the metropolitan of the province, by way of special prerogative; whence the courts where the validity of such wills is tried, and the offices where they are registered, are called the prerogative courts, and prerogative offices."

And in 3 Bl. Com. 65:

"The prerogative court was established for the trial of all testamentary causes, where the deceased hath left *bona notabilia* within two different dioceses. In which cases the probate of wills belongs, as we have formerly seen, to the archbishop of the province, by way of special prerogative. And all the causes relating to the wills, administrations, or legacies of such persons are, originally, cognizable herein, before a judge appointed by the archbishop, called the judge of the prerogative court."

But in our state the ordinary and judge of the prerogative court are, and always have been, one and the same, and their powers—that is, their jurisdictions, have been blended also. This is expressly stated by Mr. Justice Van Syckel in his concurring opinion in *Harris* v. *Vanderveer's Executor*, 21 N. J. Eq. 424

(at *p. 447*), where he says that "the power of the ordinary and the prerogative court, which existed separately under the English system, have been blended here."

The blending of the ordinary and judge of the prerogative court into one and the same functionary, and also their powers into one jurisdiction in our state, resulted from the fact that such of the ecclesiastical jurisdiction in England, which was transmitted to the colony, was confided to the governor, whose jurisdiction was, of course, state-wide. *Griff. L. R. (N. J.)* *1185*, where, in *note 1*, the author states:

"The jurisdiction of the governor as the ordinary of New Jersey, before the revolution and since, extended throughout the state, and a will, administration or guardianship proved or granted by himself or a surrogate (and he appointed as many as he chose to do), was valid, without regard to the place where the goods lay. Hence he possessed the prerogative powers of the ecclesiastical jurisdiction, in these particulars."

The state, and the colony before it, was divided into counties, and the jurisdiction of the ordinary—there never has been but one at the same time—did, and does, run through all the counties. In colonial times, and later, the surrogates were appointed by the ordinary as his deputies and they had jurisdiction in all cases submitted to them unless some special restrictions were inserted in their commissions. As already remarked, the doctrine of *bona notabilia* never had any place here. *In re Coursen's Will, 4 N. J. Eq. 408, 413*. And, although surrogates were later made county officers with probate jurisdiction limited to their respective counties, that in nowise affects the jurisdiction of the ordinary.

The first act of the legislature concerning the ordinary and the prerogative court, passed December 16th, 1784 *(Pat. L. p. 59)*, expressly enacted in section 2, that "for the more regular hearing and determining of all causes cognizable before the ordinary, he shall statedly hold a prerogative court," &c. See the present act entitled "An act respecting the prerogative court and the power and authority of the ordinary (Revision of 1900)." *Comp. Stat. p. 1722 § 77 et seq.* The first section defines the authority of the ordinary as to granting probate of wills, &c., and the tenth provides that it shall be the duty of the register of

the prerogative court to record all wills, .&c.   That the ordinary holds a court in granting probate is beyond question.   The function is judicial and therefore must be exercised in a court.   Even the surrogate holds a court when probating a will.   *Mellor* v. *Kaighn, 99 Atl. Rep. 207.*

The contention that the ordinary is without power to refer the matter at bar to a vice-ordinary is also unsound.   The contention is, that because the appeal is given in terms to the *ordinary,* and that no power to refer it is given in the same statute, the right does not exist.   This is fallacious, for, by act of 1913 (*P. L. 1913 p. 81*), the ordinary is empowered to refer any matter pending in the prerogative court to a vice-ordinary for hearing and advice, but the jurisdiction which the vice-ordinaries exercise, upon reference to them, is not derived from this statute, but by delegation from the ordinary by virtue of his inherent powers.

In an exhaustive review of the powers of the vice-chancellors (whose office was likewise created by statute)—*In re Thompson, 85 N. J. Eq. 221*—Chancellor Walker (at *p. 257*) holds that "their jurisdiction is complete by delegation from the chancellor, under the authority inhering in his general power derived from the high court of chancery in England and devolved upon our court of chancery by the ordinances of Lord Cornbury and Governor Franklin and ratified by the constitution of 1776 and 1844."

And (at *p. 261*) he holds that a perfect analogy exists with reference to the prerogative court, in which the legislature has authorized the appointment of vice-ordinaries, the ancient office of surrogate, as deputy or assistant to the ordinary, being the source of power in the vice-ordinaries.

It is to be observed that in the act creating the office of vice-ordinary (*P. L. 1913 p. 81*), the *legislature* has provided that the *ordinary* may refer to any vice-ordinary any cause or other matter which at any time may be pending in the *prerogative court,* to hear the same for the ordinary and report thereon to *him* and advise what order or decree should be made therein. Now, if the ordinary is a functionary apart from himself as the

judge of the prerogative court, it is singular that the law-making body did not bestow the power to refer upon the judge of the prerogative court, the only functionary who, in such case, could constitutionally exercise it, instead of casting it upon the ordinary, who could not lawfully do so. In this we have legislative interpretation to the effect that the ordinary and judge of the prerogative court, and likewise their jurisdiction, are one and the same.

Enough has been shown, I think, to demonstrate that the act under which this assessment was made, and which gives an appeal to the ordinary, treats the ordinary and the prerogative court as one and the same—a single judicial entity.

The giving of an appeal to the ordinary in the Inheritance Transfer Tax act is a valid legislative enactment.

It may be that *certiorari* in the supreme court is a method for the review of an appraisement or tax, made or levied, under the Inheritance Transfer Tax act, but, considering that an appeal has been provided to the ordinary, the supreme court would probably deny the *allocatur* on such a writ before, or even after, the time for appeal to the ordinary had expired, as the allowance of an *allocatur* is discretionary. *Florenzie* v. *East Orange, 88 N. J. Law 438.*

*In re Prudential Insurance Co. of America, 82 N. J. Eq. 335,* the court of errors and appeals held that the statutory scheme providing for the condemnation of the capital stock of a stock life insurance company for certain purposes mentioned, was cast by the legislature upon the chancellor, or the court of chancery, a distinction which, if it exists, was of no practical moment to the motion then before the court of errors and appeals; and (at *p. 339*) that the statutory proceeding before that court was reviewable by *certiorari* only, regardless of the fact that one of the agencies that took part in it was the "court of chancery."

I hold that the proceeding before me is one in the prerogative court, and one which the ordinary could lawfully refer by virtue of the act of 1913 (*P. L. 1913 p. 81*), empowering him to refer to any vice-ordinary any cause or other matter which at any time might be pending in the prerogative court.

Now, the act of 1909 (*P. L. 1909 p. 325*) provides for taxing the transfer of property of decedents by devise, descent, &c., and section 18, as seen, allows anyone dissatisfied with an assessment of such taxes to appeal to the ordinary. The only question raised by such an appeal is as to whether or not the assessment is excessive, and the review of such a question may be devolved upon a court of appeal. *Florenzie* v. *East Orange, supra.* There an appeal from an assessment for benefits for a municipal improvement was confided to the circuit court, and the jurisdiction thus given was upheld. Here, an appeal from the assessment of a property transfer tax is confided to the ordinary of the prerogative court. The principle is the same. The grant of appellate jurisdiction to. this court in tax transfer matters is as valid as that to the circuit courts in assessments for municipal improvements. The reason that legislation establishing special statutory tribunals for the hearing and determining of appeals theretofore cognizable only in the supreme court on *certiorari* is valid, is, because a review of the decision of the special tribunal is removable into the supreme court by *certiorari,* and that court's jurisdiction on *certiorari* is therefore not impaired. *Certiorari* in such cases is in the nature of an appeal, and an appeal is a judicial proceeding cognizable in a court.

It would appear that the decree of the prerogative court on these appeals is reviewable by *certiorari* in the supreme court, instead of by appeal to the court of errors and appeals. *In re Prudential Insurance Co. of America, 82 N. J. Eq. 335, 339; Florenzie* v. *East Orange, 88 N. J. Law 438, 440.* This question is suggested in the briefs, but is not before me for decision.

The jurisdictional question having been determined, I will, upon application of counsel, designate a day for hearing the facts.