The executors of the decedent's estate filed their account, and prayed for its allowance. The guardian ad litem of two of the infant beneficiaries under the will, filed exceptions to it. Counsel for the exceptants suggested the propriety of referring the exceptions to a master, authorizing him to take testimony and submit a report thereon. The account is extensive, and an investigation of the exceptions filed to it will probably take some time — more time than the vice-ordinary is at present able to conveniently allot. The question of a reference was argued vigorously and heatedly pro and con. The matter was taken under advisement by the court. Subsequently, the proctor for the executors gave notice of motion to strike the exceptions. They were argued orally one week after the aforesaid argument.
The executors seek a decree (first) allowing the account as just and true; (second) decreeing that the executors are entitled to $241,485.15; and (third) decreeing that the proctor of the executors is entitled to $51,282.77.
Counsel for three of the infant beneficiaries, who appears satisfied with the account as filed, in opposing a reference to a master, admits that the orphans court "is authorized to make reference to masters in chancery by sections 9, 9a, 126 and 181 of the Orphans Court act," and declares "there is no corresponding authority conferred by statute upon the prerogative court," and consequently "the prerogative court has no power to refer this account to a master as requested by counsel for the exceptants." The prerogative court requires no statutory authorization to make such an order. It is a constitutional, and not a statutory, court. While the legislature *Page 566 
may extend the power of the court, it is without the power to divest it of jurisdiction. Flanigan v. Guggenheim SmeltingCo., 63 N.J. Law 647. The ordinary in In re Abraham Coursen'sWill, 4 N.J. Eq. 408, inter alia, said:
"Nothing is more embarrassing in our whole municipal system than this subject of the powers of the ordinary, the surrogates, and the orphans court. * * * A reference to the history of the courts exercising ecclesiastical jurisdiction in New Jersey, may serve to throw some light on this subject. * * * By the commission and explanatory instructions given to Lord Cornbury, the first royal governor, all the ecclesiastical jurisdiction of the province relating to `the collating to benefices, granting licenses for marriages and probate of wills,' was reserved to the governor. Leaming Spicer, 639. He was not only ordinary, but metropolitan of the province. He had no superior but the queen in council. His court was called the `prerogative court,' an appellation applied in England to the archbishop's court. Nor had he any subordinates; his jurisdiction over these subjects was sole and exclusive. This constitution of the court continued till the revolution, and was adopted by the convention which framed the present constitution of the state in seventeen hundred and seventy-six."
The court has inherent power in all matters relating to wills. Section 76 of "An act respecting the prerogative court, and the power and authority of the ordinary (Revision of 1900)," 2 Comp.Stat. p. 1722 reads as follows:
"The authority of the ordinary shall extend only to the granting of probates of wills, letters of administration, letters of guardianship, and to the hearing and finally determining of all disputes that may arise thereon."
Rule 56 of the prerogative court is as follows:
"Motions and applications in the prerogative court * * * may be made to the vice-ordinaries; and the same are hereby referred to them to hear and advise orders thereon without special reference."
Rule 57 of the prerogative court states that: *Page 567 
"The final hearing of causes in the prerogative court, * * * may * * * be referred to the vice-ordinary * * *; and when so referred, the proceedings before the vice-ordinaries shall, as nearly as may be, be the same as on references by the chancellor to the vice-chancellors."
In the instant case the executors having presented their account to the ordinary, he, in turn, has referred the account to the vice-ordinary. The vice-ordinary is required to hear the matter and advise the ordinary thereon. Rule 57 of the prerogative court states that the procedure before the vice-ordinary "shall, as nearly as may be, be the same as on references by the chancellor to the vice-chancellors." A vice-ordinary can advise an order of reference to a master in chancery, and such order so advised, when signed by the ordinary, is the order, not of the vice-ordinary, but that of the ordinary of the prerogative court. The ordinary refers matters to vice-ordinaries. Why, then, has he not the same power to refer matters to masters? The answer is to some extent furnished in the promulgation of his rule 56 herein quoted, which may be said to be a rule of general reference. To say he may refer matters to vice-ordinaries and, in the same breath, deny his power to likewise refer to masters in chancery is somewhat of a contradiction. His written direction, be it in the form of an order or a promulgated rule, is decisive.
It may not be out of place to observe that the ancient practice of the court of chancery was to have all the testimony taken before examiners. Not so many years ago, the office of examiners in chancery was abolished. In most of the uncontested matters in chancery to-day, the testimony is taken before a master.
24 Corp. Jur. 1014 § 2460, says:
"In a proper case, upon the settlement of the account of a personal representative, a reference may be ordered by the probate court to a referee, auditor, commissioner, or master, who may be directed to state an account."
Corp. Jur. further records that:
"While probate courts are not, generally speaking, courts of equity, and therefore do not possess general equity powers, in matters which *Page 568 
fall within their jurisdiction they do possess many of the powers usually exercised by courts of equity, and are authorized to apply the rules and principles of equity and to proceed in many respects after the manner of courts of equity." 15 C.J. p. 1014§ 427.
"The manner of the exercise of their jurisdiction by probate and similar courts may be, and frequently is, controlled by statute * * *. But the court should not decline to take cognizance of a particular matter within its jurisdiction because the statute does not provide for the mode of exercising jurisdiction in such cases. It has been considered proper for courts of probate to proceed according to the practice of chancery * * * and that, where a general power is given, but the mode of its exercise is not prescribed, the procedure is to be regulated by the court in the exercise of its sound discretion. Such courts are not trammelled by strict forms of procedure * * *." 15 C.J. p. 1018 § 429.
"With respect to the settlement of the account of an executor * * * there should be a hearing * * *. The proceedings on the filing of exceptions to an administration account are in the nature of a suit in equity. Whenever applicable the rules of procedure in civil cases should be applied, but in most matters arising on such a proceeding strict formality is not required * * *." 24 C.J. p. 1011 § 2457.
Certainly, the prerogative court, a product of the constitution of this state, is vested with full power to hear and determine all matters coming within its jurisdiction. It possesses all the powers of a court of the same jurisdiction, even though there has been no legislative grant of power for the proper administration of this work. Chancellor Halsted, sitting as ordinary in Reeves'Ex'rs v. Townsend's Adm'rs, 8 N.J. Eq. 81, on appeal from the orphans court, directed the taking of further testimony with reference to an account to be settled in the prerogative court, without any statutory authority for such procedure. Chancellor Runyon in Tucker v. Tucker, 28 N.J. Eq. 223, sitting in the prerogative court as ordinary, without any statutory authority, said: "The executor applied to this court, on the hearing of the appeal, for leave to take further testimony. The privilege should, under the circumstances, be accorded to him, with leave to the exceptant to produce evidence in rebuttal. * * * The cause will be reheard when the new testimony shall have come in."
In In re Lewis, 28 N.J. Eq. 234, Chancellor Runyon, sitting as ordinary in the prerogative court, appointed an administratorpendente lite, although there is no statutory warrant for such procedure. *Page 569 
Vice-Chancellor Lewis, sitting as vice-ordinary in the prerogative court in In re Dittman's Ex'rs, 87 N.J. Eq. 297,inter alia, said:
"The blending of the ordinary and judge of the prerogative court into one and the same functionary, and also their powers into one jurisdiction in our state, resulted from the fact that such of the ecclesiastical jurisdiction in England, which was transmitted to the colony, was confided to the governor, whose jurisdiction was, of course, state-wide. * * * In colonial times, and later, the surrogates were appointed by the ordinary as his deputies, and they had jurisdiction in all cases submitted to them unless some special restrictions were inserted in their commissions. * * * And, although surrogates were later made county officers with probate jurisdiction limited to their respective counties, that in nowise affects the jurisdiction of the ordinary. * * * The contention that the ordinary is without power to refer the matter at bar to a vice-ordinary is also unsound. The contention is, that because the appeal is given in terms to the ordinary, and that no power to refer it is given in the same statute, the right does not exist. This is fallacious, for by the act of 1913 (P.L. 1913 p. 81), the ordinary is empowered to refer any matter pending in the prerogative court to a vice-ordinary for hearing and advice, but the jurisdiction which the vice-ordinaries exercise, upon reference to them, is not derived from this statute, but by delegation from the ordinary by virtue of his inherent powers."
In In re Walker, 95 N.J. Eq. 619, Chancellor Walker, sitting as the ordinary in the prerogative court, in the third syllabus in that case prepared by him, said:
"The prerogative court has, and always has had, exclusive jurisdiction to entertain and pass the accounts of executors * * * whose letters have been issued by it; and, consequently, the provisions in section 6 of the Orphans Court act (Comp. Stat. p.3813), (providing that subsequent proceedings for the settlement of an estate shall be had before the surrogate of the county) is invalid and unconstitutional."
Mr. Justice Katzenbach, speaking for the court of errors and appeals in In re Roberson, 95 N.J. Eq. 672, in part said: *Page 570 
"The practice which obtains in the prerogative court is, broadly speaking, the same as that in the court of chancery. In the case of Watkinson v. Watkinson, 68 N.J. Eq. 632;60 Atl. Rep. 931; 69 L.R.A. 397; 6 Ann. Cas. 326, this court held that, although there is no express statutory limitation as to the time in which the court may be asked by a defeated party to review its action, the analogous limitation of the right of appeal should govern."
At the outset of the opinion of Chancellor McGill, in Hurlbut
v. Hutton, 44 N.J. Eq. 302; 15 Atl. Rep. 417, he said: "The exceptions to be considered are to the master's report upon an account of the executors of the will of Benjamin H. Hutton, deceased."
In view of the foregoing, and mindful of the inherent powers of the prerogative court, there is no doubt in my mind of the right of a vice-ordinary to advise an order of reference of matters appearing before the prerogative court to a master in chancery to take testimony and report thereon to the court. In considering the instant case, the size and the importance of the account, the exceptions filed thereto, the attitude of counsel in opposing the reference, and, after the question of reference had been taken under consideration by the court, and before a decision was rendered upon the prior question of reference, then serving a notice of motion to dismiss the exceptions theretofore filed to the account, prompts me to advise an order referring the disputed matters to a master to take testimony and make a report thereon to this court. *Page 571